# ORIENT INSURANCE COMPANY *v.* DAGGS.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 81.   Argued December 8, 1898. — Decided January 16, 1869.

The provision in section 5897 of c. 89, art. 4 of the Revised Statutes of Missouri, that "in all suits upon policies of insurance against loss or damage by fire, hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value below the amount for which the property is insured, the property may have sustained, between the time of. issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant; and in case of partial loss, the measure of damages shall be that portion of the value of the whole property insured, ascertained in the manner hereinafter described, which the part injured bears to the whole property insured;" and the provision in section 5898 "that no condition of any policy of insurance contrary to the provisions of this article shall be legal or valid," are not, when applied to a foreign insurance corporation insuring property within the State in conflict with the provisions of the Fourteenth Amendment to the Constitution of the United States, forbidding a State to make or enforce a law which shall abridge the privileges or immunities of citizens of the United States, or to deprive any person of life, liberty or property without due process of law; or to deny to any person within its jurisdiction, the equal protection of the laws.

A corporation is not a citizen within the meaning of that Amendment, and hence has not the privileges and immunities secured to citizens against state legislation.

That which a State may do with corporations of its own creation it may do with foreign corporations admitted into it.

*Hooper* v. *California*, 155 U. S. 648, cited, approved and applied.

THIS was an action at law upon a policy of insurance, issued by the plaintiff in error, a corporation organized under the laws of the State of Connecticut. The policy was issued in June, 1893, insuring the defendant in error against loss or damage by fire to a certain barn situated in Scotland County, Missouri, in a sum not to exceed $800. The barn was, within less than three months after the issuing of the policy, entirely consumed by fire, and an action was brought upon the contract to compel the payment of the entire sum of $800.

The petition filed in the case avers the delivery of the policy of insurance to the defendant in error, and says that the company, by virtue of said policy, promised to pay the plaintiff the sum of $800 in case said barn should be destroyed by fire, and attaches a copy of the policy to the petition as the basis of the action.

The answer filed by the company stated that the " defendant is a corporation, organized and existing under and by virtue of the laws of the State of Connecticut, doing a general fire insurance business in the State of Missouri, and avers it has been doing such business continually since and prior to the first day of June, 1873, and that said defendant was and is fully authorized to do such business in the State of Missouri." The answer admitted the delivery of the policy and the total destruction of the barn by fire; that the plaintiff was the owner thereof, and that proofs of loss had been made.

The defendant further answering, stated that the contract of insurance sued on in the case was the contract between the parties, and that it provided that " said insurance company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and that the loss or damage shall be ascertained or estimated according to the actual cash value of the property at the time of the fire, and shall in no case exceed what it will cost to replace the same, deducting therefrom a suitable amount for any depreciation of said property from age, use or location, or otherwise."

The answer further averred that at the time of the burning of the building in question it was not worth to exceed $100, which amount the plaintiff in error then offered to pay, with interest from the date of the fire, and to return the premium. The answer of the defendant further averred as follows:

" The defendant says that section 5897 of chapter 89, article 4, Revised Statutes of the State of Missouri, compiled in the year 1889, provides as follows: ' In all suits brought upon policies of insurance against loss or damage by fire, hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; and in case of total loss of the property insured, the measure of damages shall be the amount for which the same was insured, less whatever depreciation in value below the amount for which the property is insured the property may have sustained, between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant.' . . . And that section 5898 of said chapter provides that no condition in any policy of insurance contrary to the provisions of this article, meaning thereby article 4, shall be legal or valid. The defendant says that said statute was enacted prior to the issuing of said policy and has not been repealed."

The defendant pleaded that said statute is contrary to the constitution of Missouri, and that the same is unconstitutional, null and void, and proceeded to aver as follows:

" The defendant further answering says that sections 5897 and 5898 of chapter 89, article 4, of the statutes of Missouri are contrary to and in contravention of the Constitution of the United States, which provides that no State shall pass any bill of attainder or *ex post facto* law, or laws impairing the obligation of contracts.

" Defendant further answering says that said sections, and each of them, are contrary to and in contravention of article 14 of the Constitution of the United States, commonly called the Fourteenth Amendment, and particularly of article 1 of said Amendment, which is as follows:

" ' All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'

"And that said sections 5897 and 5898 of chapter 89, article 4, of the Revised Statutes of Missouri are unconstitutional and contrary to the Constitution of the United States, and are null and void.

"That the defendant has the constitutional right to limit its liability by contract to actual damages caused by fire."

To this answer the plaintiff and assured filed a demurrer, which demurrer the court sustained, and the defendant, electing to stand upon the ruling upon said demurrer, judgment was entered in favor of the plaintiff, and in due course the cause was appealed to the Supreme Court of Missouri. At October term, 1896, the Supreme Court of Missouri rendered an opinion in said case, affirming the judgment of the court below. 136 Missouri, 282. The case then came to this court in due course upon petition in error.

There are twenty-three assignments of error which present the claim of plaintiff in error under the Constitution of the United States and the alleged error of the state court denying the claim.

*Mr. Alfred H. McVey* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE McKENNA, after stating the case, delivered the opinion of the court.

The statute of Missouri is alleged to violate the Fourteenth Amendment of the Constitution of the United States in the following particulars: (1) that it abridges the privileges or immunities of citizens of the United States; (2) denies to

persons within its jurisdiction the equal protection of the laws.; and (3) deprives persons of property without due process of law.

(1) It is not clear that this ground is relied on. It is, however, not available to plaintiff in error. A corporation is not a citizen within the meaning of the provision, and hence has not "privileges and immunities" secured to "citizens" against state legislation. This was decided in *Paul* v. *Virginia*, 8 Wall. 168, against a corporation upon which were imposed conditions for doing business in the State of Virginia, and has been repeated in many cases since, including one at the present term, *Blake* v. *McClung*, ante, p. 239.

(2) It is not easy to make a succinct statement of the objections of plaintiff in error under this provision. Counsel says: " The business of insurance includes insurance against damages on account of death, accident, personal injury, liability for acts of employés, damages to plate glass, damages by hail, lightning, high wind, tornadoes, and against damages to personal property on account of fire or casualty by other elements, as well as insurance against loss or damage to buildings on account of fire. . . . No other business is subject to the discrimination, in case such business is involved in litigation, of having the damages assessed without due process of law. The statute singles out persons engaged in fire insurance as against all other kinds of insurance, and as against all other kinds of business, and imposes the onerous and unusual conditions provided in the statute, against such persons." And again: " The statute thus discriminates as to the subject-matter, as to the parties, as to the mode of trial of actions at law and equity, and imposes upon this particular class of underwriters, as distinguished from all the rest of the world, conditions which abrogate its contracts, compel it to pay damages never sustained, and prevent it from having an investigation upon the trial by due process of law."

This mingles grounds of objection, and confounds the prohibitions of the provision we are considering with that of the next provision. Whether the statute of Missouri provides for " due process " we shall consider hereafter, and upon that con-

sideration determine how much of the complaint against it in that regard is true. Now we may confine ourselves to the more specific contention that it discriminates between fire insurance corporations or companies and those engaged in other kinds of insurance.

It is not necessary to state the reasoning upon which classification by legislation is based or justified. This court has had many occasions to do so, and only lately reviewed the subject in *Magoun* v. *Illinois Trust and Savings Bank*, 170 U. S. 283. We said in that case that " the State may distinguish, select and classify objects of legislation, and necessarily the power must have a wide range of discretion." And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and is not reviewable unless palpably arbitrary. The classification of the Missouri statute is certainly not arbitrary. We see many differences between fire insurance and other insurance, both to the insurer and the insured — differences in the elements insured against and the possible relation of the parties to them, producing consequences which may justify if not demand different legislative treatment. Of course it is not for us to debate the policy of any particular treatment, and the freedom of discretion which we have said the State has is exhibited by analogous if not exact examples to the Missouri statute in *Railway Company* v. *Mackey*, 127 U. S. 204, 208, and in *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26.

In *Railway Company* v. *Mackey*, 127 U. S. 204, a law of Kansas was passed which abrogated as to railroads the rule of the common law exempting masters from liability to one servant for the negligence of another. It was sustained as a valid classification, notwithstanding that it did not apply to other carriers, or even to other corporations using steam. The law was objected to, as the statute of Missouri is objected to, on the ground that it violated the provisions of the constitution which we are now considering.

To the first contention the court, by Mr. Justice Field, said : " The plain answer to this contention is, that the liability imposed by the law of 1874 arises only for injuries subsequently committed ; it has no application to past injuries, and it cannot be successfully contended that the State may not prescribe the liabilities under which corporations created by its laws shall conduct their business in the future, where no limitation is placed upon its power in this respect by their charters. Legislation to this effect is found in the statute books of every State." And after further comment added : " That its passage was within the competency of the legislature, we have no doubt." 'To the second contention it was said : " It seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition ; but nothing can be farther from the fact." The legislation was justified by the character of the business of railroad companies, and it was declared to be a matter of legislative discretion whether the same liability should or should not be applied to other carriers, or to persons and corporations using steam in manufactures.

In *Minneapolis Railway Company* v. *Beckwith*, 129 U. S. 26, a law of Iowa making a class of railroad corporations for special legislation was sustained.

(3) " What it is for a State to deprive a person of life, liberty or property without due process of law " is not much nearer to precise definition to-day than it was said to be by Mr. Justice Miller in *Davidson* v. *New Orleans*, 96 U. S. 97.

The process " of judicial inclusion and exclusion " has proceeded, and yet this court, in *Holden* v. *Hardy*, 169 U. S. 366, 389, again declined specific definition. Mr. Justice Brown, speaking for the court, said : " This court has never attempted to define with precision the words ' due process of law,' nor is it necessary in this case. It is sufficient to say that there are certain immutable principles of justice which inhere in the very idea of free government, which no member of the Union may disregard, as that no man shall be condemned in his person or property without due notice and an opportunity of being heard in his defence." These principles were extended to the right

to acquire property and to enter into contracts with respect to property, but it was said "this right of contract, however, is itself subject to certain limitations which the State may lawfully impose in the exercise of its police powers."

The legislation sustained was an act of the State of Utah making the employment of workingmen in all underground mines and workings and in smelters and all other institutions for the reduction and refining of ores or metals eight hours per day, except in cases of emergency, where life or property should be in imminent danger. The violation of the statute was made a misdemeanor. It was undoubtedly a limitation on the right of contract — that of the employer and that of the employed — enforced by a criminal prosecution and penalty on the former and on his agents and managers. It was held a valid exercise of the police powers of the State. These powers were not defined except by illustration, nor need we now define them. The case is a precedent to support the validity of the Missouri statute now under consideration.

The statute provides as follows: "In all suits brought upon policies of insurance against loss or damage by fire, hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; *and in case of total loss of the property insured, the measure of damages shall be the amount for which the same was insured,* less whatever depreciation in value below the amount for which the property is insured the property may have sustained between the time of issuing the policy and the time of the loss, and the burden of proving such depreciation shall be upon the defendant." . . . It is also provided that no condition in any policy of insurance contrary to such provision shall be legal or valid.

The specific objections which, it is claimed, bring the statute within the prohibition of the Constitution, in the last analysis, may be reduced to the following: That the statute takes away a fundamental right and precludes a judicial inquiry of liability on policies of fire insurance by a conclusive presumption of fact.

The right claimed is to make contracts of insurance. The essence of these, it is said, is indemnity, and that the statute converts them into wager policies — into contracts (to quote counsel) having for their bases speculation and profit, "contrary to the course of the common law." The statement is broad, and counsel in making it ignores many things. The statute tends to assure, not to detract from the indemnity of the contracts, and if elements of chance or speculation intrude it will be on account of carelessness or fraud. It is admitted that the effect of the statute is to make valued policies of those issued; and the conclusive effect which has been ascribed to their valuation has never been condemned as making them wager policies or as introducing elements of speculation into them.

The statute then does not present the alternative of wager policies to indemnity policies. The change is from one kind of indemnity policy to another kind, from open policies to valued policies, both of which are sanctioned by the practice and law of insurance, and this change is the only compulsion of the law. It makes no contract for the parties. In this it permits absolute freedom. It leaves them to fix the valuation of the property upon such prudence and inquiry as they choose. It only ascribes estoppel after this is done — estoppel, it must be observed, to the acts of the parties, and only to their acts in open and honest dealing. Its presumptions cannot be urged against fraud, and it permits the subsequent depreciation of the property to be shown.

We see no risk to insurance companies in this statute. How can it come? Not from fraud and not from change, because, as we have seen, the presumptions of the statute do not obtain against fraud or change in the valuation of the property. Risk then can only come from the failure to observe care — that care which it might be supposed, without any prompting from the law, underwriters would observe, and which if observed would make their policies true contracts of assurance, not seemingly so, but really so; not only when premiums are paying, but when loss is to be paid. The State surely has the power to determine that this result is desirable, and to

accomplish it even by a limitation of the right of contract claimed. by plaintiff in error.

It would be idle and trite to say that no right is absolute. *Sic utere tuo ut alienum non lædas* is of universal and pervading obligation. It is a condition upon which all property is held. Its application to particular conditions must necessarily be within the reasonable discretion of the legislative power. When such discretion is exercised in a given case by means appropriate and which are reasonable, not oppressive or discriminatory, it is not subject to constitutional objection. The Missouri statute comes within this rule.

The cases cited by plaintiff in error, which hold that the legislature may give the effect of *prima facie* proof to certain acts, but not conclusive proof, do not apply. They were not of contract nor gave effect to contracts. It is one thing to attribute effect to the convention of parties entered into under the admonition of the law, and another thing to give to circumstances, maybe accidental, conclusive presumption and proof to establish and force a result against property or liberty.

The statute is not subject to the condemnation that it regulates contracts made or rights acquired prior to its enactment; and we may repeat the language of Mr. Justice Field, in *Missouri Railway Co.* v. *Mackey, supra,* that "it cannot be successfully contended that the State may not prescribe the liabilities under which corporations created by its laws shall conduct their business in the future, where no limitation is placed upon its power in this respect by their charters. Legislation to this effect is found in the statute books of every State."

That which a State may do with corporations of its own creation it may do with foreign corporations admitted into the State. This seems to be denied, if not generally, at least as to plaintiff in error. The denial is extreme and cannot be maintained. The power of a State to impose conditions upon foreign corporations is certainly as extensive as the power over domestic corporations, and is fully explained in *Hooper* v. *California,* 155 U. S. 648, and need not be repeated.

It is urged that the statute is not made a condition upon foreign corporations, but this view is not open to our acceptance. The Supreme Court of Missouri, exercising its function of interpretation, decides that it is. But we do not care to enter fully into the subject of conditions on corporations, foreign or domestic. The statute is sustained on the grounds that we have given.

The other contentions of plaintiff in error we do not consider it is necessary to review.

*Judgment affirmed.*