State, *ex rel.*, *v.* Schlitz Brewing Co.

State, *ex rel.* Astor, *v.* Schlitz Brewing Company.

(*Jackson.*    June 18, 1900.)

1. Anti-trust Law.  *Constitutionality of.*

The anti-trust statute of 1897 is in all respects constitutional and valid.  (*Post, pp. 717–752.*)

Act construed: Acts 1897, Ch. 94.

2. Same.  *Same.*

The exclusion, by a distinct section, of agricultural products and live stock in the hands of the producer or raiser from the operation of an anti-trust statute whose title embraces all trusts, combinations, etc., without exception, does not render the statute obnoxious to the constitutional objection that its body embraces a subject not expressed in its title.  (*Post, pp. 725–730.*)

Constitution construed: Art. II., § 17.

Acts construed: Acts 1897, Ch. 94.

3. Same.  *Same.*

A provision in an anti-trust statute declaring the measure of damages recoverable by injured parties from violators of the statute to be the full consideration paid for goods controlled by the trusts, does not render the statute obnoxious to the constitutional objection that it embraces a subject not expressed in the title, where the title authorizes provisions both for recovery of damages and penalties.  The provision may be treated as one relating to either damages or penalties.  (*Post, pp. 740–743.*)

Constitution construed: Art. II., § 17.

Act construed: Acts 1897, Ch. 94.

4. Same.  *Same.*

An anti-trust statute whose title and body undertake to deal with both articles of domestic manufacture and imported goods, is not obnoxious to the constitutional objection that it embraces and deals with more than one subject.  Trade and

its obstruction by trusts is the general subject of the statute, and embraces commerce in both domestic and imported goods. (*Post, pp. 743–745.*)

Constitution construed: Art. II., § 17.

Act construed: Acts 1897, Ch. 94.

5. SAME. *Same.*

A provision in an anti-trust statute excluding agricultural products and live stock in the possession of the producer or raiser from its operation, does not render the statute void as vicious class legislation. The classification is not arbitrary and capricious, but natural and reasonable. and the statute is not, therefore, in conflict with either the Federal or State Constitution. (*Post, pp. 730–737.*)

Constitution construed: Art. I., § 8; Art. XI., § 8; XIV. Amendment (U. S.).

Act construed: Acts 1897, Ch. 94.

6. SAME. *Same.*

An anti-trust statute, otherwise free from exception, is not obnoxious to constitutional objection because of its restriction and regulation of the right of contract—the right to acquire and dispose of property. The right of contract is not absolute, but subject to just restriction and control by the law of the land. (*Post, pp. 745–748.*)

Constitution construed: Art. I., § 8.

Act construed: Acts 1897, Ch. 94.

7. SAME. *Same.*.

That provision of the anti-trust statute which authorizes the "Court" to impose the fine and imprisonment, refers not to the Judge, but to the Court and jury, and is not obnoxious to the objection that it undertakes to confer powers upon the Judge in violation of the Constitution. (*Post, pp. 737–740.*)

Constitution construed: Art. VI., § 14.

Act construed: Acts 1897, Ch. 94.

Cases cited: Railroads *v.* Crider, 91 Tenn., 490; France *v.* State, 6 Bax., 479; McGhee *v.* State, 2 Lea, 625; Morton *v.* State, 91 Tenn., 443.

8. CONSTITUTIONAL LAW. *Title and subject of statute.*

The constitutional requirement that statutes shall have but one subject, that subject to be expressed in the title, is mandatory,

State, *ex rel.*, *v.* Schlitz Brewing Co.

and a statute is void *in toto* that violates this requirement in either of its branches. (*Post, pp. 726-741.*)

Constitution construed: Art. II., § 17.

Act construed: Acts 1897, Ch. 94.

Cases cited: Cannon *v.* Mathes, 8 Heis., 504; State *v.* McCann, 4 Lea, 1; Murphy *v.* State, 9 Lea, 379; Ragio *v.* State, 86 Tenn., 275; Cole Mfg. Co. *v.* Falls, 90 Tenn., 482; State *v.* Yardley, 95 Tenn., 346.

9. SAME. *Same.*

It is not essential to the constitutionality of a statute that its title shall epitomize or recite in detail the provisions contained in its body. (*Post, pp. 726, 727.*)

Constitution construed: Art. II., § 17.

Cases cited: State *v.* Brown, 103 Tenn., 450; State *v.* Yardley, 95 Tenn., 346.

10. SAME. *Same.*

It is essential to the constitutionality of a statute that its body and provisions shall conform to and be confined within the scope of its title, whether that title is general or special, broad or narrow. (*Post, pp. 728, 729.*)

Constitution construed: Art. II., § 17.

Cases cited: State *v.* Bradt, 103 Tenn.; 584; Hyman *v.* State, 87 Tenn., 109.

11. SAME. *Same.*

It is not essential to the constitutionality of a statute that its provisions shall be made co-extensive with the scope of its title. Omissions, exceptions, and provisos which are germane to and embraced within the general scope of the title, may be embodied in the statute without mention in the title, unless they are by the terms of the title specifically and positively forbidden. (*Post, pp. 728, 729.*)

Constitution construed: Art. II., § 17.

Cases cited: State *v.* Brown, 103 Tenn., 450; Cannon *v.* Mathes, 8 Heis., 519; Railroads *v.* Crider, 91 Tenn., 494; State *v.* Yardley, 95 Tenn., 546; Bank *v.* Devine Grocery Co., 97 Tenn., 603.

12. SAME. *Class legislation.*

Class legislation is not obnoxious to any constitutional objection, either under Federal or State Constitution, where it is based

State, *ex rel.*, *v.* Schlitz Brewing Co.

on classifications that are not arbitrary or capricious, but natural and reasonable. (*Post, pp. 731–733.*)

Constitution construed: Art. I., § 8; Art. XI., § 8; XIV. Amendment (U. S.).

Cases cited: Harbison v. Knoxville Iron Co., 103 Tenn., 423; State v. Frost, 103 Tenn., 686; Breyer v. State, 102 Tenn., 103; Railroad v. Harris, 99 Tenn., 686; Sutton v. State, 96 Tenn., 696, 710; Henley v. State, 98 Tenn., 667; Stratton v. Morris, 89 Tenn., 500; Railroads v. Crider, 91 Tenn., 490; State v. Alston, 94 Tenn., 674; 177 U. S., 164; 175 U. S., —— ; 172 U. S., 557; 170 U. S., 283; 165 U. S., 150; 163 U. S., 81.

13. SAME. *Same.*

Classification for legislation is a matter in regard to which the legislative body has a wide range of discretion. "Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons, or in their relations. It suffices if it is practical, and is not reversible unless palpably arbitrary." (*Post, pp. 731–733.*)

Cases cited: 170 U. S., 294; 172 U. S., 562.

14. SAME. *Of statutes of doubtful meaning.*

Statutes passed with due form and ceremony, when tried for unconstitutionality, are entitled to the benefit of every reasonable doubt. And if a statute is susceptible of two meanings, that one will be adopted, though the less plausible, which reconciles it to the Constitution, rather than another which brings it in conflict with that instrument. (*Post, p. 740.*)

Cases cited: Cole Mfg. Co. v. Falls, 90 Tenn., 466; Railroads v. Crider, 91 Tenn., 491; State v. Yardley, 95 Tenn., 548; Austin v. State, 101 Tenn., 564; Railroad v. Harris, 99 Tenn., 686; Henley v. State, 98 Tenn., 666.

15. SAME. *Policy of legislation.*

With the wisdom, policy, and expediency of legislation the Courts have nothing to do. That is a question exclusively for legislative discretion, which is not reviewable by the Courts. (*Post, pp. 740, 741.*)

Cases cited: Sutton v. State, 96 Tenn., 696; Reelfoot Lake, etc., Dist. v. Dawson, 97 Tenn., 159; Henley v. State, 98 Tenn., 665; Railroad v. Wells, *ante, p.* 706.

State, *ex rel.*, *v.* Schlitz Brewing Co.

16. SAME.  *Right of contract.*

The right of contract is a part of both the right of "property" and the right of "liberty," but it is, nevertheless, subject to restriction and control, without violation of Federal or State Constitution, by statutes enacted in such manner as to become the law of the land.  (*Post, pp. 746–748.*)

Constitution construed: Art. I., § 8.

Cases cited: Harbison *v.* Knoxville Iron Co., 103 Tenn., 422; Dayton, etc., Co. *v.* Barton, 103 Tenn., 605.

17. SAME.  *When a statute is a law of the land.*

To constitute the law of the land it is indispensable that a statute: (1) must have been passed with due form and ceremony; (2) must embrace equally all persons who are now or may hereafter be in like condition, and, if class legislation, must, in addition, be natural and reasonable in its classification, and (3) it must conform to all other requirements in the Constitution.  (*Post, pp. 747, 748.*)

Case cited: Harbison *v.* Knoxville Iron Co., 103 Tenn., 423.

18. STATUTES.  *Exceptions.*

An exception in a statute, though put in a distinct and separate section, has the same legal effect as if inserted in its proper place as part of a section.  (*Post, pp. 729, 730.*)

19. CHANCERY COURT.  *Has jurisdiction of proceedings under Anti-trust Act.*

Chancery Court has jurisdiction to enforce, by injunction or otherwise, against corporations, whether domestic or foreign, the forfeitures denounced for violation of the Anti-trust Act of 1897.  (*Post, 748–750.*)

Act construed: Acts 1897, Ch. 94.

Code construed: § 6109 (S.); § 5043 (M. & V.).

20. SAME.  *Same.*

And such proceeding in the Chancery Court is "due process of law" within the meaning of that term as used in the Anti-trust Act of 1897.  (*Post, p. 750.*)

21. SAME.  *Same.*

And the Chancery Court has jurisdiction to enforce the forfeitures denounced by the Anti-trust Act of 1897, without any precedent judgment or conviction at law.  (*Post, pp. 750, 751.*)

State, *ex rel.*, *v.* Schlitz Brewing Co.

22. SAME. *Same.*

Chancery Court has jurisdiction, under Anti-trust Act of 1897, to proceed against agents and employees of offending corpora- tions only as such, and not personally, except for disobe- dience to orders of the Court. (*Post, pp. 751, 752.*)

23. FOREIGN CORPORATIONS. *Rights of.*

Foreign corporations have no absolute right to recognition in the State. They can be excluded altogether or admitted on any terms the State chooses to prescribe. (*Post, pp. 752, 753.*)

Cases cited: State *v.* Phœnix Ins. Co., 92 Tenn., 420; Dugger *v.* Ins. Co., 95 Tenn., 246; 8 Wall., 168; 155 U. S., 648; 172 U. S., 566; 177 U. S., 28.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

Attorney-general PICKLE and W. W. GOODWIN for State.

L. & E. LEHMAN for Schlitz Co.

CALDWELL, J. The bill in this cause was brought in the name of the State of Tennessee, on the relation of W. B. Astor, against the Schlitz Brewing Company, a foreign corporation with its situs in Milwaukee, Wisconsin, and Sig- mund Roescher, its agent in Tennessee.

The complainant alleged as matter of fact, in substance, that the defendants, as principal and agent, had entered into, and for years had en- forced, and were still enforcing, an arrangement,

contract, agreement, trust, or combination with the Tennessee Brewing Company, a domestic corporation, with its situs and principal place of business at Memphis, Tennessee, and with other brewers, for the purpose and with the tendency and effect of lessening competition in the importation and sale of beer, and of dominating and controlling the price thereof in this State; and charged as matter of law, in substance, that the Schlitz Brewing Company thereby violated the provisions of Section 1 of Chapter 94 of the Acts of 1897, and, as declared in Section 2 of that Act, forfeited the right to do business in this State; and prayed that the Schlitz Brewing Company be forever restrained by injunction from transacting business in this State.

The defendants demurred to the bill on numerous grounds, some assailing the Act referred to as unconstitutional in several particulars, some denying the jurisdiction of the Chancery Court, and others disputing the sufficiency of the facts alleged.

The Chancellor sustained one assignment of demurrer as to the unconstitutionality of the Act, one as to the want of jurisdiction of the Court, but overruled all the others. Both the complainant and the defendants have appealed, and their assignments of error, when combined, present all the questions raised by the demurrer except those relating to the sufficiency of the facts alleged in the bill.

20 P—46

State, *ex rel.*, *v.* Schlitz Brewing Co.

The Act whose provisions are invoked by the complainant, and whose constitutionality is called in question by the defendants, is familiarly known as the anti-trust statute of 1897. Its terms, title, and body are as follows:

"AN ACT to declare unlawful and void all arrangements and contracts, agreements, trusts, or combinations made with a view to lessen, or which tend to lessen, free competition in the importation or sale of articles imported into this State; or in the manufacture or sale of articles of domestic growth or of domestic raw material; to declare unlawful and void all arrangements, contracts, agreements, trusts, or combinations between persons or corporations, designed, or which tend, to advance, reduce, or control the price of such product or articles to producer or consumer of any such product or articles; to provide for forfeiture of the charter and franchise of any corporation, organized under the laws of this State, violating any of the provisions of this Act; to prohibit every foreign corporation, violating any of the provisions of this Act, from doing business in this State; to require the Attorney-general of this State to institute legal proceedings against any such corporations violating the provisions of this Act, and to enforce the penalties prescribed; to prescribe penalties for any violation of this Act; to authorize any person or corporation, damaged by any such trust, agreement, or combination, to sue for the recovery of such damages, and for other purposes.

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee, and it is hereby enacted by the authority of the same,* That from and after the passage of this Act all arrangements, contracts, agreements, trusts, or combinations between persons or corporations, made with the view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this State, or in the manufacture or sale of articles of domestic

growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or cost to the producer or to the consumer of any such product or article, are hereby declared to be against public policy, unlawful and void.

"Sec. 2. *Be it further enacted,* That any corporation chartered under the laws of this State which shall violate any of the provisions of this Act, shall thereby forfeit its charter and its franchise, and its corporate existence shall thereupon cease and determine. Every foreign corporation which shall violate any of the provisions of this Act, is hereby denied the right to do, and is prohibited from doing, business in this State. It is hereby made the duty of the Attorney-general of this State to enforce the provisions by due process of law.

"Sec. 3. *Be it further enacted,* That any violation of the provisions of this Act shall be deemed, and is hereby declared to be, destructive of full and free competition and a conspiracy against trade, and any person or persons who may engage in any such conspiracy, or who shall as principal, manager, director, or agent, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or orders made in furtherance of such conspiracy, shall, upon

conviction, be punished by a fine of not less than one hundred dollars or more than five thousand dollars, and by imprisonment in the penitentiary not less than one year, nor more than ten years; or in the judgment of the Court by either such fine or imprisonment.

"Sec. 4. *Be it further enacted,* That the provisions of this Act shall not apply to agricultural products or live stock while in the possession of the producer or raiser.

"Sec. 5. *Be it further enacted,* That any person or persons, or corporation, that may be injured or damaged by any such arrangement, contract, agreement, trust, or combination described in Section 1 of this Act, may sue for and recover in any Court of competent jurisdiction in this State, of any person, or persons, or corporation operating such trust or combination, the full consideration or sum paid by him or them for any goods, wares, merchandise, or articles the sale of which is controlled by such combination or trust.

"Sec. 6. , *Be it further enacted,* That it shall be the duty of the Judge of the Circuit and Criminal Courts of this State specially to instruct grand juries as to the provisions of this Act.

"Sec. 7. *Be it further enacted,* That all laws and parts of laws in conflict with the provisions of this Act be, and the same are hereby, repealed.

"Sec. 8. *Be it further enacted,* That this Act

State, *ex rel.*, *v.* Schlitz Brewing Co.

take effect from and after its passage, the public welfare requiring it.

"Passed April 5, 1897.

"MORGAN C. FITZPATRICK,

"*Speaker of the House of Representatives.*

"JOHN THOMPSON,

"*Speaker of the Senate.*

"Approved April 30, 1897.

"ROBERT L. TAYLOR,

"*Governor.*"

The fourth assignment of demurrer, which is one of the two sustained below, is that the Act just quoted is unconstitutional and void for the reason that the caption thereof recites it to be an Act to declare unlawful and void all arrangements, contracts, agreements, trusts, or combinations such as is averred the Schlitz Brewing Company and Sigmund Roescher, its agent, entered into with the Tennessee Brewing Company, and the fourth section of said Act provides that the provisions thereof shall not apply to agricultural products or live stock while in the hands of the producer or raiser, which makes it obvious that under the title of one subject forbidding all trusts, agreements, contracts, or combinations aforesaid, an exception or limitation is made in said fourth section, not in accord with or in pursuance of the title of said Act, and that therefore said Act embraces in the fourth section a subject not con-

templated in, but in direct antagonism to, the specific terms of the said title.

The particular provision of the Constitution here referred to by the demurrants is Article 2, Section 17, clause 2, which declares that, "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title;" and the proposition they present in this assignment of demurrer is, that the fourth section of the present Act violates that provision by introducing a subject not embraced in the title, and that the whole Act is, therefore, unconstitutional and void.

The proposition is unquestionably a sound one, if it be true as a fact that Section 4 of the Act introduces a subject not embraced in the title; for that requirement of the organic law is mandatory both as to the singleness of the subject of the bill and as to the expression of that subject in the title, and if a given bill embraces two subjects, or but one subject and it is not expressed in the title, the attempted legislation is invalid *in toto. Cannon* v. *Mathes,* 8 Heis., 504; *State* v. *McCann,* 4 Lea, 1; *Murphey* v. *State,* 9 Lea, 379; *Ragio* v. *State,* 86 Tenn., 275; *Cole Mfg. Co.* v. *Falls,* 90 Tenn., 482; *State* v. *Yardley,* 95 Tenn., 346.

The title to this Act is unnecessarily full and extended, in that it needlessly undertakes to epitomize and recite in considerable detail the legis-

lation to follow. Black's Constitutional Law, Sec. 107; *State* v. *Brown*, 103 Tenn., 450; *State* v. *Yardley*, 95 Tenn., 546.

The essence of the subject expressed is, the prohibition and punishment of those transactions which are calculated to lessen competition in trade, or to influence the price of either imported or domestic articles; and it requires only a casual reading of Sections 1, 2, 3, and 5 of the Act to discover that each of them deals with some part of that subject, the former two employing practically the same language used in the title.

The fourth section obviously relates to the same subject, and to that alone. It mentions no new or different subject, directly or indirectly, and adds nothing to the scope of the other sections, but, on the contrary, limits their application in express terms. The fourth section is purely restrictive and exclusionary. It is in the nature of an exception, and its only office is to except or exclude from the operation of the Act a small portion of the domain otherwise included, and thereby bring the legislation within somewhat narrower limits. The legislation included in the other sections is undoubtedly within the subject expressed in the title; hence, this section, which only excepts or excludes certain transactions from the prohibition and penalties of that legislation, necessarily relates to that subject, and to it alone.

It is a contradiction in terms and in logic to

say that the transactions excepted by the fourth section are not embraced in the subject expressed in the title, and that excepting them is the introduction of a new subject—that the exclusion of a part of one thing is the inclusion of something else. That which excepts does not enlarge, and that which is excluded cannot be additional.

The title of a legislative bill may be either narrow and restricted or broad and general, as the members of the General Assembly may prefer, and, whether it be in the one form or the other in a given instance, all legislation that is germane to the subject as expressed in the title is within the title and permissible under it; but of course much that might be germane under the latter class of titles could not be so under the former.

If the title adopted be narrow and restricted, carving out for treatment only a part of a general subject, the legislation under it must be confined within the same limits (*State* v. *Bradt*, 103 Tenn., 584; *Hyman* v. *State*, 87 Tenn., 109, 113; Cooley Const. Lim. (5th ed.), 179); if it be broad and general, the legislation under it may have a like scope.

In every instance the enactment must come within the title, but in no case is it required to cover the whole domain within the title. The Constitution forbids that an enactment shall go beyond the limits of its title, but there is no

State, *ex rel.*, *v.* Schlitz Brewing Co.

requirement that it shall completely fill it. Our statute books afford numerous instances of somewhat meager enactments under ample titles, and there are perhaps but few of those with broad and general titles that would not admit of some additional provision.

It is of no legal consequence that the present title does not mention the exception, because it is never essential that the title' of a bill recite the subdivisions, provisos, and exceptions appearing in its body, and the fact that they do appear without previous mention in no way affects the constitutionality of the Act, so long as they are germane to the subject expressed in the title. *State* v. *Brown,* 103 Tenn., 450; *Cannon* v. *Mathes,* 8 Heis., 519; *Railroads* v. *Crider,* 91 Tenn., 494; *State* v. *Yardley,* 95 Tenn., 546.

Indeed every title admits of exceptions in the body of the Act, unless it be so framed as to "specifically and positively" forbid them, as was held to be true of the title of the Act considered in *Bank* v. *Divine Grocery Co.,* 97 Tenn., 603.

The title of the Act now under consideration is not of the latter class. It does not "specifically and positively," or in any other manner, forbid the exception; hence, the exception, being germane to the subject expressed, is admissible under the title employed.

Nor does it matter that the exception appears

in a section by itself. The Act must be construed as a whole, and when that is done it has precisely the same meaning that it would have if the exception had been appropriately incorporated in the other sections. If the meaning be clear, the relative position of the exception in the enactment is unimportant.

Demurrants say that the exception is out of accord with, in antagonism to, and not within the contemplation of the title; but that is a mistake, since, as already stated, the title, though not reciting the exception, legally includes and authorizes it.

It follows from what has been said that Section 4 of this Act does not introduce a subject not expressed in the title, and that the learned Chancellor was in error in sustaining the fourth ground of demurrer.

The seventh and the twelfth assignments of demurrer also challenge the constitutionality of the Act on account of the fourth section. The seventh is, that the Act "in making the exception contained in the fourth section thereof is in violation of the Fourteenth Amendment of the Constitution of the United States, in denying to persons made amenable to the provisions thereof, within the jurisdiction of Tennessee, the equal protection of the laws;" and the twelfth is that the Act is "void because it does not apply to all persons, there being excepted from its operation agricultural

State, *ex rel.*, *v.* Schlitz Brewing Co.

products and live stock while in the possession of the producer or raiser, and said Act is therefore partial and class legislation, and is not the law of the land."

These two assignments, though involving parts of two different fundamental laws (the former United States Constitution, Amendment 14, Section 1, and the latter Tennessee Constitution, Article 1, Section 8, and Article 11, Section 8) really raise but one question, and may well be considered as a single objection.

That question is whether or not the exception found in the fourth section is of such a character as to make the Act invalid class legislation.

There can be no doubt, in view of the exception, that the prohibition and penalties of the Act apply to some citizens and classes of citizens and not to others, and consequently that the enactment may be appropriately and truly characterized as class legislation. Hence, if the mere fact of being class legislation is sufficient to invalidate the Act, its invalidity should be confessed, and the inquiry stopped at the threshold. But the Act cannot be adjudged invalid on that ground alone.

Class legislation is of two kinds, namely, that in which the classification is natural and reasonable, and that in which the classification is arbitrary and capricious.

Enactments of the former kind are uniformly

recognized by the Supreme Court of the United States and by this Court as constitutional and valid, while those of the latter kind are by the same Courts, and with equal uniformity, condemned as unconstitutional and invalid. *Pelit* v. *Minnesota,* 177 U. S., 164; *Tullis* v. *Lake Erie & Western Railroad Co.,* 175 U. S.; *Orient Ins. Co.* v. *Daggs,* 172 U. S., 557; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S., 283; *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S., 150; *Lowe* v. *Kansas,* 163 U. S., 81; *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 423; *State* v. *Frost,* 103 Tenn., 686; *Breyer* v. *State,* 102 Tenn., 103; *Railroad* v. *Harris,* 99 Tenn., 686; *Sutton* v. *State,* 96 Tenn., 696, 710; *Henley* v. *State,* 98 Tenn., 667; *Stralton* v. *Morris,* 89 Tenn., 500; *Railroads* v. *Crider,* 91 Tenn., 490; *State* v. *Alston,* 94 Tenn., 674.

In the case of *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S., 294, the Court said that "the State may distinguish, select, and classify objects of legislation, and necessarily the power must have a wide range of discretion." After quoting these words with approval, in *Orient Ins. Co.* v. *Daggs,* 172 U. S., 562, the Court remarked: "And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons, or in

their relations. It suffices if it is practical, and is not reviewable unless palpably arbitrary."

To which of the two kinds of class legislation, then, does the present Act belong? Is the classification it makes natural and reasonable, or is it arbitrary and capricious?

The Act condemns (in Section 1) and punishes (in Sections 2, 3, and 5) "all arrangements, contracts, agreements, trusts, or combinations between persons or corporations, made with a view to lessen or which tend to lessen full and free competition in the importation or sale of articles imported into this State, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed or which tend to advance, reduce, or control the price or cost to the producer or to the consumer of any such product or article," except (Section 4) such as may be entered into by the owners in reference to "agricultural products or live stock while in the possession of the producer or raiser." Differently expressed, the Act leaves farmers and stock raisers free to make such transactions as they may choose, and as are otherwise allowable (for the common law allows no one to make transactions in restraint of trade. *Bailey* v. *Master Plumbers,* 103 Tenn., 99), in relation to their farm products and live stock while yet in their possession; but

visits the prescribed punishment on them, and on all other persons for all other transactions that are calculated to impair free competition in trade and to influence the price of imported or domestic articles.

Farmers and stock raisers constitute the excepted class, and they are excepted from the penalties of the Act only in respect of those transactions which relate to farm products or live stock while yet in the possession of the producer or raiser. Even they are not excepted when they enter into other lines of business, or when they have transactions in relation to agricultural products or live stock which have passed out of the possession of the original owner.

This classification is not arbitrary and capricious, but natural and reasonable. From an early period in the history and growth of English jurisprudence, the common law has denounced as contrary to public policy, void and nonenforceable, all contracts, agreements, arrangements, and combinations, of whatever name and form, that tend to impair competition in trade and influence prices to the detriment of the public. *Bailey* v. *Master Plumbers,* 103 Tenn., 99. The General Assembly, deeming that rule of the common law inadequate in this advanced and enterprising age, supplemented and enlarged it, first by the Act of 1889, Chapter 250, then by the Act of 1891, Chapter 218, and finally by the Act now in question.

The additional restraints by that · body considered necessary for the public good, are by this Act laid upon those dealings that are naturally and necessarily calculated to entail the greater public injury, and others are left under the restraints of the common law and of such parts (if any) of previous Acts as were not impliedly repealed. Obviously those transactions that are excepted from the penalties of this Act, rarely, if ever, result in evil to the public, while those upon which the penalties are imposed are believed to have that effect generally. Allowing that all persons, natural and artificial, are alike ambitious of financial gain and equally willing to acquire it through the means reprehended so distinctly in this Act, it is nevertheless true that farmers and stock raisers in this State, when acting within their limited sphere of immunity from those penalties, have, at most, but few opportunities and slight facilities for impairing competition and controlling prices, while those of many of the other pursuits have such opportunities and facilities almost without limit. This difference alone, to say nothing of others that may have been in the minds of legislators, is amply sufficient to justify the classification made and place it beyond judicial review.

It might be truly said, in opposition to the distinction just drawn, that agricultural products and live stock furnish the basis for some of

the most hurtful and oppressive trusts, combines, and corners known to the history of trade; and yet, it is certain that none of these have ever been, or can ever be, projected and carried out by farmers or stock raisers when dealing alone with their products or live stock while yet in the possession of the producer or raiser. It is wholly impracticable, not to say impossible, for them, as individuals, and while each one retains the possession of his farm products or live stock, to conduct dealings in relation thereto that will or can seriously impair competition and injuriously affect prices; and if they, the better to accomplish that end, by mutual consent place their commodities under the control of a common agency, and subject them to agreed rules and schedules, they thereby surrender the possession contemplated by the Act, and are no longer of the excepted class, but of the other one, and subject to all the penalties laid upon it.

The difference between the two classes can be well and fairly emphasized, though not fully illustrated, by contrasting the position and influence of farmers in the disposition of their wheat, corn, hops, sugar cane, and cotton seed, with those of the milling trust, the whisky trust, the beer trust, the sugar trust, and the Standard Oil Company in their dealings in relation to the same commodities respectively.

The classification made in the different Acts

sustained separately, in *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S., 283, in *Orient Ins. Co.* v. *Daggs,* 172 U. S., 557, in *Tullis* v. *Lake Erie & Western Railroad Co.,* 175 U. S., in *Petit* v. *Minnesota,* 177 U. S., 164, in *State* v. *Alston,* 94 Tenn., 674, in *Railroads* v. *Crider,* 91 Tenn., 490, in *Henley* v. *State,* 98 Tenn., 667, in *Railroad* v. *Harris,* 99 Tenn., 686, in *Breyer* v. *State,* 102 Tenn., 103, in *State* v. *Frost,* 103 Tenn., 686, and in numerous other cases that might be cited, are no more natural and reasonable, and no less arbitrary and capricious, than is that made in the Act now under consideration; hence, each of those cases is a precedent for the conclusion just announced herein.

Defendants place much reliance on the case of *Union Sewer Pipe Co.* v. *Connelly,* 99 Fed. Rep., 354, wherein Kohlsaat, District Judge, held that the presence of an exception like that found in our Act, in the Illinois anti-trust statute of 1893, rendered it obnoxious to both Federal and State Constitutions. But, with deference, we decline to follow that decision, unsupported by discussion or the citation of authorities as it is, over our own conviction, and in the face of the numerous cases mentioned in this opinion.

The seventh and twelfth grounds of demurrer were rightly overruled by the Chancellor.

The fifth assignment of demurrer is as follows:

"Said Act in the third section thereof provides

20 p—47

that upon any violation thereof the violator, upon conviction, shall be punished by a fine of not less than one hundred dollars nor more than five thousand dollars, and by imprisonment in · the · penitentiary not less than one year nor more than ten years, or in the discretion of the Court, by either such fine or imprisonment, which is violative of Section 14, Article 6, of the Constitution of Tennessee, in authorizing the Court to lay a fine exceeding fifty dollars, not assessed by a jury, the fine being discretionary, and also allowing the imposition of such fine and imprisonment by the Court in the alternative."

This assignment calls for a construction of the word "Court," appearing in the concluding clause of the impeached section, and for an application of that part of the organic law which declares that "no fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars." Constitution, Article 6, Section 14.

Demurrants assume that the word "Court," as employed in that part of the Act, means the presiding Judge as contradistinguished from the jury trying the case; and, upon that theory they say the constitutional prohibition referred to is violated by the attempt to confer upon him, as Judge, the right to assess a fine, in his discre-

tion, at any sum not less than one hundred dollars nor more than five thousand dollars.

If that assumption be correct, there can be no doubt that the conclusion contended for is entirely sound. The terms of the inhibition are too plain and positive to admit of any other interpretation. *McGhee* v. *State,* 2 Lea, 625; *Morton* v. *State,* 91 Tenn., 443.

The Judge, as such, can impose a fine for more than fifty dollars only when the Legislature has definitely fixed a larger and specific fine for the particular offense, and then he determines the amount of the fine from the face of the statute, and not as a matter of judicial discretion. *France* v. *State,* 6 Bax., 479.

The term "Court," however, was evidently not intended as a designation of the presiding Judge in his distinctive functions, but rather as a collective word, indicating the tribunal before which the conviction should be had, and including both Judge and jury. The same word, standing in like connection, was so construed in the case of *Railroads* v. *Crider,* 91 Tenn., 490.

Moreover, if the true intent of the Legislature were doubtful, and the Act at this point were susceptible of both constructions, and that presented by the defendants were conceded to be the more plausible, still the Court, out of deference to a co-ordinate branch of the government, would resolve the doubt in favor of the constitutionality

of the Act, and adopt that construction that would permit it to stand.

Acts passed with due form and ceremony, as this one was, when tried for unconstitutionality, as this one is, are entitled to the benefit of every reasonable doubt. *Cole Mfg. Co.* v. *Falls,* 90 Tenn., 466; *Railroads* v. *Crider,* 91 Tenn., 491; *State* v. *Yardley,* 95 Tenn., 548; *Austin* v. *State,* 101 Tenn., 564; *Railroad* v. *Harris,* 99 Tenn., 686; *Henley* v. *State,* 98 Tenn., 666.

The sixth assignment of demurrer is that the Act "is unconstitutional and void for the further reason that the fifth section thereof provides that any person or persons who may be injured or damaged by any such arrangement, agreement, contract, trust, or combination, as described in Section 1 thereof, may sue for and recover damages from any person or persons engaged in operating such trust, contract, or combination, the full consideration or sum paid by him or them for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust, which is a subject not embraced in the title of said Act, and gives a remedy against a corporation in favor of a private citizen to an extent that might swallow up the assets of the corporation to the great injury, loss, and detriment of its innocent stockholders and creditors."

It is readily observed that the latter part of this assignment, in which demurrants express them-

State, *ex rel.*, *v.* Schlitz Brewing Co.

selves so strongly in regard to the supposed effect
of the remedy complained of, involves only a ques-
tion of legislative policy, which the Courts have
no power to review if in fact hurtful, and which
can have no weight in the consideration of the
constitutional question presented in the former
part. *Sutton* v. *State,* 96 Tenn., 696; *Reelfoot
Lake Levee District* v. *Dawson,* 97 Tenn., 159;
*Henley* v. *State,* 98 Tenn., 665; *Railroad* v. *Wells,*
*ante,* p. 706.

Omitting, then, that animadversion as irrele-
vant and immaterial, the real objection presented
in this assignment is that the remedy prescribed
in Section 5 of the Act is not embraced in
the subject expressed in the title.

In the argument at the bar the objection is
made more specific, when it is said that the title
limits the remedy to actual damages, and, hence,
that the provision in the body of the Act, that
the damaged person may recover the full con-
sideration paid for the goods whose sale is con-
trolled by the trust or combination, goes beyond
the subject expressed in the title.

As before ruled in this opinion, that provision
of the Constitution (clause 2, Section 17, Article
2) here for the second time invoked against this
Act, is mandatory, and legislation, to be valid,
must always come within the title, whether it be
narrow and restricted or broad and general.

The subject of this Act, as already stated, is

the prohibition and punishment of those transactions which are calculated to lessen competition in trade, or to influence the price of either imported or domestic articles. This subject, if expressed in the title in these words, would unquestionably embrace the provision found in Section 5 of the Act, for the word punishment would include civil relief to the injured person against the wrongdoer. But the title is more elaborate; and it is in its excess of elaboration that demurrants find the supposed limitation in the matter of civil remedy to the person damaged by some prohibited transaction of others. On this point, and in its conclusion, the title recites that one object of the Act is "to authorize any person or corporation, damaged by any such trust, agreement, or combination, to sue for the recovery of such damages, and for other purposes."

This language may be plausibly said to contemplate a provision for the recovery of actual damages, but it is not so restrictive as to preclude the insertion of a provision for a different measure of recovery. With that recitation, or without it, Section 5 is confessedly germane to the general purpose of the Act, and being so it cannot consistently be said to bring in a different subject, or to be excluded from that of which it is a part, in the absence of the plainest words of exclusion.

Besides, it cannot be affirmed with any degree

of certainty that the measure of recovery prescribed in the Act is not in fact within the bounds of actual damages, for it is a matter of common knowledge that men who, in their business, become the injured victims of trusts or combinations often suffer not only a depreciation in the salable value of their commodities then on hand, but also a complete destruction of their business for the future; and the aggregate losses so sustained in many instances greatly exceed the prices they originally paid for the commodities in question.

Furthermore, if treated as a penal provision, as demurrants are disposed to call it, Section 5 is clearly within both letter and spirit of the other title recitation, "to prescribe penalties for any violation of this Act."

The tenth assignment of demurrer is that the Act "is void because it contains two subjects, one relating to arrangements, contracts, agreements, trusts, or combinations, made with a view to lessen, or which tend to lessen, the importation or sale of articles imported into this State, which is an interference with interstate commerce, which is under the sole control and regulation of the Congress of the United States; and the other relating to the manufacture or sale of the articles of domestic growth."

Here, for the third time, this Act is impeached as in violation of the second clause of

the seventeenth section of the second article of the Constitution of the State; but, differing from the former two impeachments, which asserted that certain sections, respectively, dealt with subjects not embraced in the title, this one invokes the preceding part of the clause, and asserts that the Act is void because containing two subjects.

It is worthy of repetition at this point that both parts of the clause in question ("no bill shall become a law which embraces more than one subject, that subject to be expressed in the title") are mandatory, and that an Act containing two subjects expressed in the title, as well as one containing a single subject not expressed in the title, is absolutely null and void.

Nothing is more obvious than that this Act in its title and in its body includes dealings in reference to both imported articles and domestic articles. Yet it by no means follows° from that fact that two subjects are embraced. On the contrary, it is equally manifest to the Court that the contemplated dealings as to the one· class of articles and those as to the other class of articles form only different parts of a single subject. The thing condemned and punished by the Act is injury to trade. The thing intended to be protected is trade; and trade undeniably includes dealings in both imported and domestic commodities.

It is well said that domestic commerce and interstate commerce are different things; still, both

are comprehended in the single word, commerce; and a title with the regulation of commerce ·as its expressed subject, would, beyond doubt, be broad enough 'to include provisions as to both domestic commerce and interstate commerce.

This last observation, however, is not to be understood as even an intimation that the State Legislature may pass an Act regulating interstate commerce, or that the present one is, as demurrants assert, an interference therewith, for in reality the Court holds the opposite view on each of the propositions.

The eleventh assignment of demurrer is that the Act "is void because in forbidding combinations, trusts, agreements, contracts, or arrangements, it contravenes the provisions of the Constitution of Tennessee by restricting the disposition and acquisition of private property by citizens of this State."

This assignment, though rather vague and not made more specific in argument, is understood as challenging the Act on account of alleged conflict with that part of Section 8 of Article 1 of the Constitution which declares that "no man shall be . . . deprived of his life, liberty, or property but by . . . the law of the land."

Definitely formulated, the proposition seems to be that the constitutional provision just quoted gives to all citizens of the State the unrestricted right of acquiring and disposing of property, and

that this Act is void because it contravenes that
right by forbidding certain contracts, etc., through
which property may be acquired and disposed of.
So stated, the proposition is altogether unsound in
its most important element.

The right of contract is confessedly an inherent
part of both the right of "liberty" and the right
of "property," and deprivation of it is, therefore,
equally forbidden by that provision; but none of
them are unrestricted rights. All are subject to
the law's control, and may be abridged, or even
destroyed, within constitutional bounds. None of
them can be impaired or taken away except by
"the law of the land;" yet, all of them may be
curtailed or entirely withdrawn by that means.
The declaration against deprivation otherwise than
by "the law of the land," necessarily implies that
deprivation may be rightly accomplished and amply
justified by that law. *Harbison* v. *Knoxville Iron
Co.*, 103 Tenn., 422, 431, and citations; *Dayton
Coal & Iron Co.* v. *Barton,* 103 Tenn., 605.
(Attention is called to a typographical mistake
appearing near the top of page 430 of 103
Tenn., in the report of the opinion in the case
of *Harbison* v. *Knoxville Iron Co.* just cited.
The word "property," occurring partly in line 6
and partly in line 7 from the top of that page,
was the beginning of a paragraph in the opinion
as written, and the authorities set out before it
in the same sentence as reported, were cited in

the opinion to support the proposition immediately preceding.)

The real question, then, under this assignment is, whether or not the present Act is "the law of the land." If an affirmative answer be given, the Act is valid, however great the deprivation of the right of contract wrought by it, and if a negative answer be given, the Act is invalid, however small that deprivation.

To entitle an Act to recognition as "the law of the land," on the particuar subject of which it treats, three things are indispensable, namely: (1) It must have been passed with due form and ceremony; (2) it must embrace equally all persons who are now or may hereafter be in like condition, and if class legislation, it must, in addition, be natural and reasonable in its classification; (3) it must conform to all other requirements of the Constitution. *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 423, 437, and citations.

All of those prerequisites are present in this Act. It is therefore entitled to recognition as "the law of the land," and being so the deprivation complained of is in conformity to rather than in conflict with the Constitution.

In further refutation to the mistaken assumption that every citizen has an unrestricted right to acquire and dispose of property by such contract as he may choose to make, we quote from

the Supreme Court of the United States as follows:

"It would be idle and trite to say that no right is absolute. *Sic utere tuo ut alienum non laedas* is of universal and pervading obligation. It is a condition upon which all property is held. Its application to particular conditions must necessarily be within the reasonable discretion of the legislative power." *Orient Iron Ins. Co.* v. *Daggs*, 172 U. S., 566.

The first assignment of demurrer, which is the other one of the two sustained by the Chancellor, is in the following words: "The alleged cause of action set up in said bill is not cognizable in any Court of Chancery in Tennessee, and this Court has no jurisdiction of any of the matters set up in the bill, and the exclusive jurisdiction to hear and determine the same is vested in a Court of Law—that is, in the Circuit Court of Shelby County, Tennessee, or some other Circuit Court of Tennessee."

As has been seen, Section 3 of the Act prescribes criminal punishment, and Section 5 prescribes, additionally, a pecuniary civil liability for all violations of any of its provisions. Section 2 lays still another penalty on all corporations doing the prohibited things. It declares that any domestic corporation "which shall violate any of the provisions of this Act, shall thereby forfeit its charter and franchise, and its corporate exist-

ence shall thereupon cease and determine," and that "every foreign corporation which shall violate any of the provisions of this Act, is hereby denied the right to do so, and is prohibited from doing business in this State."

It is this penalty laid on the offending class of foreign corporations that the complainant in this cause seeks to enforce against the Schlitz Brewing Company, a foreign corporation.

Demurrants say that the action does not lie in the Chancery Court, and the Chancellor so ruled. That ruling is incorrect, for two good and sufficient reasons. In the first place, the statutory declaration, that the offending foreign corporation "is prohibited from doing business in this State," carries the implication that this penalty may be enforced by prohibitory injunction, which is a process peculiar to a Court of Equity; and in the second place, Chapter 97 of the Acts of 1877 (Shannon's Code, § 6109) gives the Chancery Court concurrent jurisdiction with the Circuit Court in all civil causes of action, except those for injuries to the person, to property or character, involving unliquidated damages, and in so doing it expressly makes this cause of action, which is not of the excepted class, cognizable in the Chancery Court.

Section 2 concludes with the sentence, "It is hereby made the duty of the Attorney-general of

this State to enforce the [these?] provisions by due process of law."

As here employed the phrase, "by due process of law," is the equivalent of the other phrase, "in any Court of competent jurisdiction," appearing in other statutes, and it does not otherwise indicate any particular tribunal. Its meaning here is wholly different from the meaning of the same phrase as used in the Federal Constitution and in several of the State Constitutions, where it has the same significance as have the words "by the law of the land," appearing in the Tennessee Constitution and in Magna Charta.

The present bill is a proceeding by due process of law within the meaning of this statute.

The third assignment of demurrer, which also goes to the jurisdiction of the Court, is that "the said bill is preferred under the provisions of the said Act of the General Assembly of Tennessee of 1897 to enjoin the Schlitz Brewing Company, as a foreign corporation, from doing business in the State of Tennessee, upon allegations that it has violated the provisions of said Act, without alleging or attempting to show that any proceeding has been instituted at law which resulted in the conviction of the said corporation in that behalf, and without such antecedent proceedings a Court of Chancery has no jurisdiction to enjoin said corporation from engaging in or doing business in the State of Tennessee."

It is in no sense essential to the complainant's right to maintain this action, that there should have been an antecedent conviction in a Court of law. The penalty whose enforcement is here sought is apart from and independent of a criminal conviction. It is prescribed in a different section of the Act, is expressed in unconditional terms, and is entirely without dependent connection with either the criminal responsibility or the pecuniary liability prescribed separately in the other two sections respectively. Any Court having jurisdiction to enforce any penalty or remedy provided for in the Act was obviously intended to have, and manifestly has, jurisdiction also to first adjudge the fact of violation on which the enforcement must ultimately find its support and justification.

The second assignment of demurrer disputes the Court's jurisdiction as to the agent of the main defendant. It is as follows: "The said bill is preferred against the Schlitz Brewing Company as a foreign corporation, under the provisions of Chapter 94 of the Acts of the General Assembly of Tennessee of 1897, to enjoin the said Schlitz Brewing Company from doing business in the State of Tennessee for alleged violation of the said Act, and Sigmund Roescher, as its agent, is made a defendant, and under said Act this Court is without jurisdiction to render a decree against the said Roescher."

Since the third section of the Act is the only

one that provides a personal remedy against an
agent, the same being a criminal prosecution, and
this action is brought under Section 2, it is clear
that the Court has no jurisdiction to render a
decree against this agent in his own right. In-
deed no personal decree is sought or could be
rendered against him in the first instance.

· Nevertheless, as corporations can do their legiti-
mate business by agents only, and can be re-
strained from doing that which is prohibited alone
through coercion of their representatives, it is al-
together proper, if not necessary in this cause,
that the resident agent of the nonresident co-
defendant be a party before the Court. Otherwise
there might be difficulty and embarrassment in en-
forcing the relief prayed for, if granted.

In connection with the observation that no per-
sonal decree can be rendered against this agent
in the first instance, it should be added that if
an injunction against him in his representative
capacity should be violated, his relation to the
cause would then and thereby become personal for
the purposes of contempt proceedings.

In conclusion, it may be added that the Legis-
lature was clearly within the scope of its consti-
tutional power when it prescribed the penalty sought
to be enforced in this proceeding. The principal
defendant, being a foreign corporation, has no ab-
solute right to recognition in this State. It may
be admitted on such terms and conditions as the

State, *ex rel.*, *v.* Schlitz Brewing Co.

Legislature, in its discretion, may see fit to impose, or it may by the same body be excluded altogether. *Paul* v. *Virginia,* 8 Wall., 168.

Its right here to engage in business, not of a Federal nature, "depends solely upon the will" of the State. *Hooper* v. *California,* 155 U. S., 648. Cases to the same effect are too numerous to mention, but see particularly *State* v. *Phoenix Ins. Co.,* 92 Tenn., 420; *Dugger* v. *Ins. Co.,* 95 Tenn., 246; *Orient Ins. Co.* v. *Daggs,* 172 U. S., 566; *Waters-Pierce Co.* v. *Texas,* 177 U. S., 28.

In the last case a provision of the Texas antitrust statute, identical in its penalty with that which this complainant seeks to enforce, was elaborately considered and upheld as valid and enforceable.

It results from all that has been said in this opinion that the present Act is constitutional in all particulars, and that the Court has ample jurisdiction to hear and determine the questions presented in complainant's bill.

This Court recognized and applied the Act in *Bailey* v. *The Master Plumbers,* 103 Tenn., 100, but its constitutionality was not in that case considered or questioned.

Reverse as to assignments of demurrer sustained by the Chancellor, affirm as to those overruled, and remand for further proceedings.