CITY OF MEMPHIS v. POSTAL TELEGRAPH CABLE CO.

(Circuit Court, W. D. Tennessee. August 1, 1905.)

No. 565.

1. MUNICIPAL CORPORATIONS—POWERS OVER STREETS—CITY OF MEMPHIS.

The streets and alleys of the city of Memphis are public property, over which the state of Tennessee, as a sovereign, has the right of absolute control, and with respect to which the city, which is the creature of the Legislature, can exercise only such powers as have been granted by the Legislature, which are limited generally by its charter to the enactment of ordinances not in conflict with the general laws.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 167, 175.]

2. TELEGRAPH COMPANIES—CHARGE FOR USING STREETS.

The Legislature of Tennessee having by Acts 1885, p. 120, c. 66, granted to telegraph companies the right to construct, operate, and maintain their lines upon the public highways and streets of the towns and cities of the state, in consideration of the immediate dispatch of official messages as therein required, the city of Memphis has no power under its charter to require a company which has constructed its lines in the streets of the city under such statute to pay a tax or rental on its poles for the use of such streets, and an ordinance imposing such tax or rental is in violation of the statute and void.

[Ed. Note.—Rights of telegraph and telephone companies to use streets, see note to Southern Bell Telephone & Telegraph Co. v. City of Richmond, 44 C. C. A. 155.]

In Equity. On demurrer to bill.

H. F. Walsh, City Atty. of Memphis (J. P. Holt, of counsel), for complainant.

J. W. Buchanan, Felder & Rountree, and Metcalf, Minor & Metcalf, for defendant.

McCALL, District Judge. On June 5, 1902, the complainant, the city of Memphis, filed its original bill in the chancery court of Shelby county, at Memphis, Tenn., against the defendant, the Postal Telegraph Cable Company, seeking to recover a judgment against the defendant company in the sum of $1,772 on account of rents alleged to be due and owing by the defendant for the occupancy of the streets of the complainant city by the telegraph poles of the defendant, or, in case such decree would not be proper, complainant asks that the rights of the defendant in and to said streets, etc., of the city of Memphis be declared forfeited, and its occupancy thereof terminated. The case was removed from the state jurisdiction to this court by the defendant on petition filed July 7, 1902, and the defendant answered the bill. Subsequently, by leave of the court, the defendant withdrew its answer, and on February 16, 1905, interposed its demurrer to the bill, and the case is now heard upon the demurrer.

There are five causes of demurrer assigned, but for the purpose of this hearing they may properly be grouped under three heads: First, that the complainant had no power or authority to rent its streets to, or collect pole rental of, the defendant; second, that the charge sought to be collected as a rental is a tax, and the city ordinance is in violation of the Constitutions of Tennessee and of the United States; third, that the rental alleged to be due complainant, accruing between December 20, 1894, and June 4, 1896, is barred by the statute of limitations.

I shall consider the first, second, and third grounds of demurrer together. As above indicated, they present this one question: Has the complainant, the city of Memphis, authority to rent its streets to, or collect pole rental of, the defendant company? To put it differently, has the city of Memphis the right to charge the defendant company for the use of its streets for the erection and maintenance of its telegraph poles? The city, assuming that it had the right, on December 20, 1894, by its legislative council, adopted an ordinance which reads as follows:

"That any telegraph or postal telegraph company, or person, occupying the streets, alleys or public grounds of, or within the limits of the city of Memphis, with telegraph poles and wires shall, as a condition of further occupancy, pay to the city annually the sum of two dollars for each of said poles, such payment to begin from January 1, 1894, in respect of all such poles that were erected prior to that date; and from the date of erection as to such as have been erected since that date."

This ordinance was amended by said council on, February 25, 1902, so as to provide that such companies should "pay to the city annually a rental in the sum of three dollars for each of said poles." It should be noted here that the amendment to the original ordinance increases the sum to be paid for each pole from $2 to $3, and inserts the word "rental" in the ordinance. Watkins' City Digest, pp. 39, 947. If the city had the right to charge for and collect this pole rental under its charter, the ordinance is valid, and the complainant might be entitled to a recovery in this case. It is stated in argument of counsel for both the complainant and defendant that the

defendant company entered the city of Memphis and began the erection of its poles in August, 1890, and hence the question presented must be decided under the law of the state of Tennessee and the ordinances of the city of Memphis as they were at that date, and had become at the time of filing this bill.

It is not controverted, but, on the other hand, it is conceded in argument by counsel for both parties, that the sovereign power to control the streets of the city of Memphis rested in the beginning with the Legislature of Tennessee. Assuming this as a starting point, let us proceed and determine, if we can, what authority the city of Memphis has over its streets, alleys, and public grounds.

In section 1 of an act entitled "An act to reduce the charter of Memphis, and the several acts amendatory thereof, into one act, and to revise the same" (chapter 26, p. 225, Acts Tenn. 1869–70), it is provided, among other things "that the city council may do all things as a natural person." Section 46 (page 235) of said act provided that the general council of the city of Memphis shall have power "to close up, transfer, or sell any street, alley or public easement, and shall have and exercise complete and perfect control over all the streets, squares and other property of the city, whether lying within or without the limits of the city." The act of 1869–70 enumerated all the rights, powers, and privileges and property rights belonging to the city of Memphis prior to the act of 1879. By section 1, c. 10, p. 13, of the Acts of 1879, the act of 1869–70, just quoted, was repealed, and section 4, c. 10, p. 14, Acts 1879, expressly provided that:

"The public buildings, squares, promenades, wharf, streets, alleys, parks and fire-engines * * * and all other property, real and personal, hitherto used by such corporation for municipal purposes are hereby transferred to the custody and control of the state to remain public property, as it has always been, for the uses to which said property has hitherto been applied."

So it appears that whatever authority the state of Tennessee, the sovereign, had delegated to the city of Memphis prior to the act of 1879, p. 13, c. 10, it was by that act withdrawn from said city, and the property taken back to the sovereign, "to remain public property as it has always been," but it was to be held by the state "for the uses to which said property has hitherto been applied." For reasons satisfactory to itself, the Legislature of Tennessee of 1879 passed an act transferring this same property which it had withdrawn from the city of Memphis by chapter 10 of said acts back to the board of fire and police commissioners of that city—using almost the identical language that was used in section 4, c. 10, p. 14 of said acts—and conferred upon the said board of commissioners of the city of Memphis substantially the same rights and powers and control over its streets, alleys, and public easements. See section 3, c. 11, p. 16, Acts Tenn. 1879. It appears from this legislation that the charter of the city of Memphis, under which it was operating at the time the defendant company entered within its limits and began the erection of its poles, as well as at the time the ordinance was adopted authorizing the collection of the pole rental sued for in this case, vested the city council or board of commis-

sioners with the power "to close up, transfer or sell any street, alley or public easement, and to have and exercise complete and perfect control over all the streets, squares and other property of the city, whether lying within or without the limits of the city," and "that the city council may do all other things as a natural person." This is very broad language—quite as much so as the language used in the charter of St. Louis, referred to in the case of City of St. Louis v. Western Union Telegraph Company, 149 U. S. 468, 13 Sup. Ct. 990, 37 L. Ed. 810. In that case it was held that the language used in the charter of St. Louis was broad enough to vest the city with authority to enact an ordinance very similar to the one in the case at bar. It is said here, however, in argument, that the power granted to the city of Memphis by this act of 1879 is very limited. Generally speaking, that may be true, yet it appears that chapter 11 of the act of 1879 vests the board of commissioners of the city of Memphis with the same or with equal powers that the general council possessed prior to 1879 touching the control and management of its streets, alleys, and public easements. The mere fact that the charter of the city of St. Louis is provided for in the Constitution of the state of Missouri does not confer upon that city any greater authority over its streets and alleys than is conferred by a charter of a city granted by a state Legislature, if the latter charter, in conferring authority to such city over its streets, alleys, and public easements, uses the same, or substantially the same, language for that purpose as is used in the charter of a city provided for in the Constitution of a state. "Unless, therefore" (using the words of Justice Brewer in the case of City of St. Louis, supra), "the telegraph company had some superior right which excludes it from subjection to this control on the part of the city over its streets, it would seem that the power to require payment of some reasonable sum for the exclusive use of a portion of its streets was within the grant of power to regulate the use." In the case at bar, for the reasons pointed out in the case of City of St. Louis v. Western Union Telegraph Company, the defendant company here gets no such rights under the act of Congress of 1866 from the general government. 148 U. S. 101, 13 Sup. Ct. 488, 37 L. Ed. 380.

Has the Legislature of Tennessee granted such a right to the defendant telegraph company? If it has, the demurrer must be sustained, and the bill dismissed. The Legislature of Tennessee (1849–50) enacted the original law granting rights of way to telegraph companies. Chapter 111, p. 303, Acts Tenn. 1849–50. This law remained practically unchanged until the adoption of the Code of Tennessee (1858). Section 1316 and subsequent sections, title 8, c. 9, of the said Code of Tennessee, provides, in substance, that any person or company may construct a telegraph line along the public highways or streets of this state, or across the rivers, or over any lands belonging to the state, free of charge, and over the lands of private individuals, as therein provided, and may erect the necessary fixtures therefor. Said fixtures not to be constructed

so as to obstruct any highway, street, or navigable stream; nor shall they be set up upon the lands of an individual, unless by contract, without paying such damages as the party sustained. In consideration of the right of way over the public property so conceded, every telegraph company, in case of war, insurrection, or civil commotion of any kind, or for the arrest of criminals, was to give immediate dispatch, at the usual rate of charge, to any message connected therewith of any officer of this state or of the United States. It was made a misdemeanor for any employé of such company to refuse to give immediate dispatch to such messages. These sections of the Code were repealed by the Legislature of 1885, and the following statute enacted:

"Any person or corporation organized by virtue of the laws of this state, or any other state of the United States, or by virtue of the laws of the United States, for the purpose of transmitting intelligence by magnetic telegraph or telephone, or other system of transmitting intelligence, the equivalent thereof, which may hereafter be invented or discovered, may construct, operate, and maintain such telegraph, telephone, or other lines necessary for the speedy transmission of intelligence, along and over the public highways and streets of the cities and towns of this state, or across and under the waters, and over any lands and public works belonging to this state, and on and over the lands of private individuals, and upon, along and parallel to any of the railroads or turnpikes of this state, and on and over the bridges, trestles or structures of said railroads: provided, that the ordinary use of such public highways, streets, works,. railroads, bridges, trestles or structures and turnpikes be not thereby obstructed, or the navigation of said waters impeded, and that just damages shall be paid to the owners of such lands, railroads and turnpikes, by reason of the occupation of such lands, railroads and turnpikes, by said telegraph or telephone corporations. * * *

"Sec. 5. In consideration of the right of way over the public property herein conceded, every telegraph or telephone corporation shall, in the case of war, insurrection, or civil commotion of any kind, and for the arrest of criminals, give immediate dispatch at the usual rates of charge, to any message connected therewith of any officer of the state, or of the United States."

Acts Tenn. 1885, p. 120, c. 66.

It is conceded by counsel for complainant in argument that the defendant began its business and erected its poles within the city limits of Memphis since the passage of the act last above quoted. Here, by an act of the Legislature, the state of Tennessee provided by law that the defendant corporation (it belonging to the class named in the act) might construct, operate, and maintain its telegraph poles along and over the public highways and the streets and alleys of the cities and towns of Tennessee, provided that the ordinary use of such highways and streets be not thereby obstructed. The consideration to the state for the right of way granted to such companies over public property is fixed by the act itself, and that is the immediate dispatch of messages of state or United States officials, at the usual charge, "in case of war, insurrection or civil commotion of any kind, and for the arrest of criminals." The act also provides "that just damages shall be paid to the owners of such lands, railroads and turnpikes by reason of such occupation thereof as provided by this act. This provision has no reference to public property." It is insisted by the defendant company that it has the right, under this act of 1885, to erect

and maintain its poles in the streets and alleys of Memphis in accordance with the terms of said act, and that the city of Memphis has no authority or right to levy or collect any charge against it therefor, either as a tax or as a rental. If the streets and alleys of Memphis are public property, over which the state of Tennessee, as a sovereign, has the right of absolute control, then I think the contention of defendant is correct. And this must be true. The title to the territory comprising the streets and alleys of the city of Memphis was originally vested in the state. We have seen that such title and authority as the city had in and over its streets and alleys prior to the Act of 1879, p. 13, c. 10, was derived from the state, and that by that act, the state divested the city of Memphis of that title and authority, and took it back to itself. We have also seen, by the Act of 1879, p. 15, c. 11, that the state again transferred to the city of Memphis this property, and granted it certain authority over its streets and alleys. Certainly, if the state had the power and right to take this title and authority from the city to itself, and again return it to the city, the state would have the right to vest the title thereto in whomsoever it pleased, or to retain it permanently; and it would follow that the state would have the right to control the streets and alleys of Memphis as the Legislature may desire, not inconsistent with the rights of abutting owners. My opinion is, therefore, that the streets and alleys of the city of Memphis are such public property, and the state, for a consideration satisfactory to it, has conceded by law to the defendant company the right to erect and maintain its poles upon the streets and alleys of the city of Memphis, and that any ordinance of the city of Memphis repugnant to this general law of the state is invalid and void. To hold that the complainant has the right to rent to telegraph and telephone companies space in the streets and alleys of Memphis for the erection of one or a dozen of their poles is to hold, in principle, that it has the right to rent space for any number of poles to all of such companies, until, as Justice Brewer says in the case of City of St. Louis v. Western Union Telegraph Company, "by a sufficient multiplication of telegraph and telephone companies, the whole space of the highways might be occupied, and that which was designed for general use for the purpose of travel entirely appropriated to the separate use of companies and for the transportation of messages." The case at bar differs materially from the case of City of St. Louis v. Western Union Telegraph Company. There the state of Missouri had not granted the right to the defendant company to erect its poles in the streets of the cities of Missouri, and the city was not hampered by a state statute, nor, indeed, could it be, under the conditions surrounding the charter of that city, and its rights and powers under the charter. In this case the corporation of Memphis is peculiarly the creature of the state Legislature, and has no power not granted by the Legislature, and can enact no ordinance which is not authorized by the Legislature, or that is contrary to any general law of the state. Indeed, section 4, c. 11, p. 19 of the Acts of 1879, under which the municipality of

Memphis was organized, provides "that the legislative council shall be vested with the power, and charged with the duty of making all laws or ordinances not inconsistent with the general laws, for every object, matter and subject within the local governments instituted by this act."

The case of Meridian v. Telegraph Company, cited by counsel for defendant, is very similar to the case at bar. 72 Miss. 910, 18 South. 84. There, as here, the power of a municipality over its streets is subject to legislative control. There, as here, the state had enacted a statute, substantially the same as in Tennessee, granting rights of way to telegraph and telephone companies. There is, however, this difference: The Mississippi statute expressly grants rights of way to telegraph and telephone companies without compensation. The Tennessee statute originally used the words "free of charge," but omitted them in the act of 1885. It is insisted by counsel for complainant that this omission is significant, and that the Legislature meant thereby that telegraph and telephone companies could be required to compensate cities and towns for the use of their streets by such companies. After a careful reading of the old statute and the new, I cannot agree with this contention. The words "free of charge" are without any significance in the old act, because in that act the state required the companies to render certain services for the right of way over public property. This was itself a charge for the use of public property. And that act would have been invalid, had the Legislature undertaken to grant to such companies rights of way over private property free of charge. Hence my conclusion is that the words "free of charge" were omitted from the act of 1885 because they were meaningless in the connection in which they were used in the old act.

I hold that the ordinance of the city of Memphis under which this suit was brought is void. In this view of the case, it is unnecessary to consider the other grounds of demurrer.

The result is that the demurrer will be sustained, and the bill dismissed.