MAYOR, ETC., OF CITY OF NASHVILLE, TENN., v. CUMBERLAND
TELEPHONE & TELEGRAPH CO.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1906.)

No. 1,507.

MUNICIPAL CORPORATIONS—TAXATION—TELEPHONE COMPANY—CONTRACT WITH
CITY CONSTRUED.

An ordinance granting a franchise to a telephone company to construct and operate its plant and the right to maintain its poles and wires in the streets contained a provision that the company should pay to the city annually a stated sum for each box in use by it, "in lieu of all other taxes except water tax." Under the Constitution and statutes of the state, the city had no power to exempt property from ad valorem taxation, but was expressly prohibited from doing so. Held that, in view of such limitation and of the rule that, where a statute or an ordinance is capable of two constructions, one of which would make it valid and the other void, the former is to be adopted, such provision must be construed as providing the box tax as the measure of the municipal taxes or charges which might be imposed by the city on account of the use and occupation of its streets

and public places; that, as so construed, it was valid, and the payment of the tax therein provided for did not affect the right and duty of the city to tax the property of the company as assessed by the state for general purposes.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

Hill McAlister and Edward J. Smith, for appellant.

William L. Granbery, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. For some time prior to October 16, 1888, the Cumberland Telephone & Telegraph Company had maintained and operated in the city of Nashville a telephone exchange under a revocable license. On that day the mayor and city council of the city passed an ordinance granting to the company the right to erect and maintain in the city a telephone plant. The ordinance was accepted by the company October 25, 1888. The first and sixth sections of the ordinance are the sections most involved in the present controversy. They are as follows:

"Section 1. That the Cumberland Telephone & Telegraph Company be and is hereby granted the right to erect and maintain in operation telegraph poles, cables, and wires over the various streets, alleys, and squares of the city, and cables and wires over the Cumberland river bridge, for the purpose of transmitting messages by telephone."

"Sec. 6. That said Telephone & Telegraph Company shall pay directly to the city comptroller each year, in lieu of all other taxes except water tax, one dollar on each and every box actually in use, said tax to be paid quarterly."

By another section the city was given the right to string the wires for the maintenance of the city's fire alarm system on the poles of the company. Since that time the company has paid the one dollar per box tax or charge, as stipulated in the sixth section, and also the general taxes assessed upon its real estate and office furniture in the city. For the years 1897, 1898, 1899, and 1900, the state board of assessors, in pursuance of a general law of the state, assessed the distributable property, the poles, wires, and accessories, according to its value, and certified its assessment to the tax assessor for the city of Nashville for the levy and collection of taxes for the purposes of the city. These taxes amount in the aggregate to the sum of $4,970.78, together with interest and penalties prescribed by law. The company has declined to pay these taxes or any part of them. The city brought this suit in the state chancery court to enforce the payment thereof, and the company, being a Kentucky corporation, removed the cause into the Circuit Court of the United States, where, the pleadings being reformed, it filed an answer denying its liability to pay the taxes sued for, and also filed a cross-petition, praying that it be allowed to set-off the sums which it had paid as one dollar per box charges specified in the sixth section of the ordinance above mentioned. The court below held and adjudged that the company was liable to pay the ad valorem taxes sued for, but that it was entitled to recover the sums paid on account of the one dollar per box charge, and to set the same off against the ad valorem taxes sued for by the city. The amount of the set-off somewhat exceeded the amount due the city, but, the defendant having waived a judgment for the ex-

cess, the suit of the city was dismissed.    The costs were divided equally between the parties.    The city appeals from the allowance of the set-off.    The company does not appeal.

No question is raised as to the regularity of the proceedings for the assessment of the ad valorem taxes or the liability of the company to pay them, if the city is not precluded from claiming them by its stipulation to accept the one dollar per box tax in lieu of all other taxes except water taxes.    The contention of the company is that the city stipulated to waive all other taxes than the one dollar per box tax and water taxes, and that it is estopped from claiming to recover this ad valorem tax; or, that if it is not so estopped, the stipulation of the company to pay the one dollar per box tax is void, and that it is entitled to recover what it has paid upon the understanding that that was to be in lieu of all other taxes except water taxes, about which no controversy has arisen. The contention of the city is that, upon the proper construction of the sixth section of the ordinance, it cannot be held to have intended, or the company be supposed to have expected, that it was thereby obtaining immunity from general taxation, but only such as the city itself had rightful authority to impose.    We think, for reasons presently to be stated, that the position of the city should be sustained.

1. The city had no power to grant immunity from general taxes levied and collected by the direct authority of the state.   The Constitution of the state (section 28, art. 2) requires that "All property, real, personal, or mixed, shall be taxed."    And section 20 of the charter of the city provides that "no municipality controlled by this act shall exempt any property from taxation not exempt from state taxation."    The purpose is that there shall be equality in the burden of taxation of all property in the state and this applies to municipalities as well as to the state.    Counsel for the company frankly says in his brief: "The telephone company also concedes that the city has no right, by contract or otherwise, to exempt property from ad valorem taxes."    But he contends that under its agreement the city cannot do both; that is, collect the one dollar per box tax and the ad valorem tax also.    The city was bound to regard the limitations upon its power imposed by its charter, and the company was bound to know the charter limitation of the city, for it was a public law, and that the city had not the power to grant an immunity from ad valorem taxes imposed under the general law of the state.    In the face of this presumed knowledge of the parties, what did they mean by the provision that the company should pay one dollar per box annually, and that this should be in lieu of all other taxes except water taxes?    To construe this language as importing an agreement that the city would violate an express provision of its charter is altogether unreasonable, and cannot be admitted.    To construe the language as intending to include those taxes or charges which the parties had power to contract about, and not those things which were wholly beyond their control, is not only a reasonable, but we think a natural, construction of their language.    Among the "taxes" which they had in mind were "water taxes," and these were ejusdem generis with those from which they were excepted.

2. There were various local "taxes" or charges to which the company was at the instance of the city liable to be subjected.    Such as, for in-

stance, for inspection of the plant and policing the streets, a privilege tax, which at that time, and until 1895, the city had power to impose (see subsection 2 of section 14 of chapter 114 of its charter); and a tax for its use and occupation of the streets and public places of the city, which by virtue of the control given to it by subsections 9 and 28 of said chapter 114, and its obligation to repair and keep in order, the city might require of the company, as we held in City of Memphis v. Postal Telegraph Cable Co. (recently decided [C. C.] 139 Fed. 707), upon the authority of St. Louis v. Western Union Tel. Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, and later cases decided by the Supreme Court. Thus the language, "all other taxes except water taxes," had a number of objects to which it was referable, and no word of the ordinance would fail to be operative. It is a familiar canon in the construction of statutes that if the language be susceptible of two constructions, one of which would make it valid and the other void, the former will be adopted. 1 Sutherland, Stat. Constr., § 83; Dugger v. Insurance Co., 95 Tenn. 245, 32 S. W. 5, 28 L. R. A. 796; State v. Schlitz Brewing Co., 104 Tenn. 715, 59 S. W. 1033, 78 Am. St. Rep. 941. The same rule is applicable to ordinances. Merriam v. New Orleans, 14 La. Ann. 318. "An ordinance is frequently capable of two constructions, one of which will bring it within the limits of the power conferred upon a corporation, another of which would invalidate it. That one should be adopted which gives effect to the ordinance." Horr & Bemis, Municipal Police Ordinances, § 193.

3. It is also to be observed in this connection that the parties used the word "taxes" in section 6 of the ordinance in the wide sense of a tribute exacted by public authority in compensation for a benefit or advantage enjoyed by a party under a grant of or permission to exercise some privilege extended to him. This ordinance was adopted in 1888. Four or five years later Mr. Justice Brewer, in delivering the opinion of the Supreme Court in St. Louis v. Western Union Tel. Co., 148 U. S. 92, 13 Sup. Ct. 485, 37 L. Ed. 380, for the first time distinguished clearly such "charges" as are permissible for the use of public property, as streets, for private purposes, as for telephone and telegraph services, and "taxes" in the proper sense of that word. It is noteworthy that in that case the telegraph company was objecting to the charges because they were "taxes," and in the Circuit Court they were characterized as, and held to be, such; and in this sixth section the language employed denotes that the one dollar per box to be paid by the company was contemplated as a tax, for this payment is to be in lieu of "all other taxes" except water taxes. It was competent for the city to measure the compensation to be made to it for the privilege of occupying its streets with the structures of the company by the number of boxes used, instead of the number of poles, as has been practiced in some other cities. There is no complaint that the method of measuring the compensation to the city is not reasonable and fair, nor could there be, for the company assented to it. The controversy is upon the larger grounds which have been herein stated. The construction which we think should properly be given to the sixth section of the ordinance of October 16, 1888, disposes of the appeal. It seems clear to us, first, that the city did not

undertake to grant to the company an immunity against the payment of general and ad valorem taxes, and, second, that it was competent for the city to agree with the company upon the amount to be paid by the latter for or in lieu of all taxes or charges which the city had lawful authority to impose upon it on account of its use and occupation of the streets and other public places of the city.

It results from these conclusions that the judgment of the Circuit Court should be reversed, and that the Circuit Court should be directed to enter a judgment in favor of the plaintiff for the amount of said several ad valorem taxes for the years 1897, 1898, 1899, and 1900, as assessed, with interest on the amount of such taxes for each several year from the time when they should have been paid to the entry of the judgment, including all penalties prescribed by law for failure to pay such taxes when due.

It is so ordered