HUGGINS v. HOME MUTUAL FIRE INSURANCE COMPANY.

[65 South. 646.]

1. CONSTITUTIONAL LAW. *Class legislation. Power of legislature. Statutes. Mutual assessment company. Liens. Insurance. Enforcement. Jurisdiction.*

The State may distinguish, select and classify object of legislation, and necessarily the power must have a wide range of discretion.

2. CONSTITUTIONAL LAW. *Class legislation. Laws 1912, chapter 171.*

Laws of 1912, chapter 171, which provides for the organization of mutual insurance corporations, limits the amount of insurance to be taken on each risk; gives to all policy holders the right to vote for directors; requires that a majority of the directors shall be residents of this state; provides for dividends to be paid to policy holders out of the earnings; for assessment of policy holders, whenever necessary to pay losses is not invalid as class legislation, as it applies to all companies doing a similar business.

3. STATUTES. *Mutual assessment company. Lien. Laws 1912, chapter 171.*

Laws 1912, chapter 171, section 18, which provides that premium notes taken by mutual fire insurance companies and all assessments shall constitute a lien on the property insured, and the land on which it is situated, upon the filing of a certificate with the clerk of the chancery court showing the facts is not invalid because it contains no direction as to what particular book in the office of the clerk of the chancery court, the certificate shall be recorded in, since the lien commences upon the filing of the certificate with the clerk and it makes no difference whether it is recorded or not.

4. MUTUAL FIRE INSURANCE. *Lien. Enforcement. Jurisdiction.*

The jurisdiction of equity is inherent to enforce the lien given mutual fire insurance companies by the Laws 1912, chapter 171, section 18, upon property insured and it is unnecessary for the statute to expressly confer such jurisdiction.

APPEAL from the chancery court of Alcorn county. HON. J. Q. ROBBINS, Chancellor.

Bill by the Home Mutual Fire Insurance Company, against J. E. Huggins. From a decree for complainants, defendant appeals.

Appellee was complainant in the court below, and appellant was defendant. From a decree granting the relief prayed by the complainant, this appeal is prosecuted. The opinion states the facts.

Sections 17 and 18 of chapter 171 of the Laws of 1912 provide that mutual fire insurance companies may take notes in payment of premiums, and that such notes and all assessments legally made against policy holders shall constitute a lien on the property insured and the land on which same is situated, provided the company files with the chancery clerk a certificate showing the facts.

*W. H. Kier,* for appellant.

The only questions presented for decision on this appeal are:  Does section 18 of said Acts of 1912, chapter 171, create a valid lien in favor of Mutual Fire Insurance Companies on the property insured, and the land on which same is situated, to secure the premium notes? And does the failure to provide any scheme or plan for the enforcement of the lien attempted to be given, render said section invalid so far as it attempts to create a lien in favor of mutual companies to secure the payment of premium notes and assessments legally assessed against policy holders?  The assignment of error in this case relates to the foregoing propositions.

While it is a recognized principle that the legislature has the right to create liens for the security of certain debts and obligations contracted, and where they are not recognized either by the common law or by equity, yet these statutory liens are regarded with jealousy, and as a general proposition, are to be strictly construed, and when the same are attempted to be created, there must also be provided some remedy for their enforcement.  The statute in this case is not sufficiently specific in that it

does not provide in what records the certificate stating the amount of note, date when due, etc., and describing the property shall be recorded. While it may be said that it is manifest what records are referred to, or what records it is intended that the said certificates shall be recorded in, yet we maintain that is not a matter which should be left to conjecture, and unless it should be specified in what records the certificate is to be recorded it is indefinite and uncertain to such an extent as render invalid the lien attempted to be created by this section invalid. The section says: "The chancery clerk shall record and index the certificates in the proper records," but does this mean that the chancery clerk shall record the certificate in some records already provided by law to be kept in his office, or does it mean that he shall procure some other and special records for indexing and recording these certificates.

There is also another ground on which we contend that the section so far as it attempts to create a lien in favor of mutual compannes is invalid, and that is that in limiting the lien created to mutual companies it thereby excluded the idea of any lien for premium notes in cases where property is insured and notes taken for the premium by any insurance companies other than mutual companies, and is therefore in the nature of class legislation. Under the provisions of this act we are met with different propositions than those contained in the chapters of the Code of 1906 with reference to the liens of Mechanics and Material Men, etc., in each of which the liens there given are general, and provision is made for the scheme or plan by which the lien may be enforced.

In the creation of statutory liens there must always be a means or method providing for enforcing those liens. Though it is one of the maxims of law that equity will not suffer a right to exist without a remedy, it is incumbent upon the law-making branches of government in the enactment of laws of this class to prescribe the methods by

which the rights attempted to be established shall be acquired.   And if, under chapter 171 of the Acts of 1912, the company has a full and complete remedy at law there is no necessity for the intervention of the chancery court. We respectfully submit that section 18 of said acts does not create a valid lien in favor of mutual fire insurance companies for all notes, or for any notes, given for premiums or for assessments legally assessed against policyholders.

*Tim E. Cooper,* for appellant.

I shall not, at any great length go into the assignments of error, nor a reply to the brief of the appellant.   The whole contention of the appellant is: First, that the act of March 15, 1912 (Acts, chapter 171), is unconstitutional because it is claimed it is not in the power of the legislature to pass the act.   The act itself is invalid because it contains no directions as to what particular book in the chancery clerk's office a record is to be made of the certificates required to be filed by section 18, of the act. Third, that if the act is constitutional and sufficiently definite in its scope, the chancery court was not given jurisdiction to enforce the lien given by the act in favor of the insurance company on the property insured for the payment of the premiums agreed to be paid.

As to the first point, I have only to say that the whole body of the act shows that mutual insurance companies form a proper class to be dealt with by legislation.   The purpose of the act is apparent; it is to reduce the cost of insurance by providing in effect for a distribution among the insured of the surplus derived from the premiums not necessary to be paid in losses nor in the expenses of the management.   Companies of this sort are not unkown in the history of many states.   A familiar illustration is to be found in those sections of the country in which, during the early crop season hailstorms prevail.   These storms are narrow in extent, but sweep to utter destruc-

tion the crops that lie in their path. No very great machinery is needed for the administration of the hail-storm companies. All farmers in a particular locality agree to contribute a fixed sum per acre. Wherever a storm occurs, a committee appointed by the inhabitants, goes upon the ground and inspects the injured crops and makes it report. At the end of the year whatever remains in the treasury is divided out *pro rata* among the assured and the operations of the company become practically suspended until next year. This is the simplest form of mutual insurance known to me.

The purpose of the act is not only to reduce the cost of insurance, but to give security to those insured and so, by the first section, a deposit of twenty-five thousand dollars is required to be made and it is further provided by said section that no policy for more than one thousand five hundred dollars shall be written on any one risk.

I will not take the time of the court to go through an examination of the statute. The Mutual Insurance Companies are practically confined, in their operation, to rural insurance, thus covering a field in which many of the old line companies refuse to operate. So salutary and much needed a statute must necessarily deal with these mutual insurance companies as a separate and distinct class intended to operate largely in the country with small risks and among a class of people who are frequently not prepared to make payments in cash of the premium. The reason why the rate of interest paid by the farmers of the country is so much greater than that paid by any other class of people, is because of the doubt-fulness of the security and the further fact that farmers, as a class, are not in the habit of promptly meeting their financial arrangments. The legislature, by section 17, of the act, attempted to give credit to the assured by providing that notes might be given for the premiums and by section 18, by fixing a lien upon the insured property for the payment of such notes.

I will not trouble the court with citation of authorities to support the proposition that the discretion of the leg-islature, in creating the dealing with a class, will not be disturbed unless the attempted classification is purely arbitrary and fanciful. The next objection made is, that the act is indefinite, because it does not provide in which particular record the certificates required to be made by section 18, shall be recorded. In the brief of associate counsel, reference is made to the authorities holding that where no particular book is pointed out, any proper book in the recording office may be used. But in addition to this, it is submitted that the lien does not depend upon the actual recordation by the clerk of the certificate re-quired to be filed. The act provides that, "the lien of the company shall not take effect until the company files with the chancery clerk of the county in which such prop-erty is located, a certificate stating the date, amount of said premium note or contingent liability, the time when due, the number and amount of the policy and such des-cription of the property insured as will enable any per-son readily to identify the same." It is this filing with the clerk upon which the lien rests and just as the filing of a deed is a compliance with our recording act from the date of such filing, so the filing with the clerk the certificate named gives effect to the lien. If the clerk fails to record and index the certificate, as requires in the succeeding clause of the statute the lien is not af-fected. Any third person by such failure would have a right of action against the clerk and his sureties for in-demnity.

But there is another reason, which seems to me to be a further reply, if any were needed, to this contention of counsel. The certificate required to be filed was thus re-quired, in order that notice might be given to other credit-ors of the assured of the existence of the lien. The as-sured is not a party to make the objection, for he, of course, knowns the facts which the company is required

.to certify. The only remaining proposition advanced by counsel for the appellant is that the chancery court did not have jurisdiction to enforce the lien given by the statute. The jurisdiction of the chancery court in cases of this class is inherent and rests upon the familiar principal that, where a right is given by law and no remedy for its enforcement, the chancery court will afford a remedy. Especially is this true in reference to liens upon real estate. Where liens are given by statute and no remedy provided, such liens are enforcible in equity. 12 Cyc., pp. 681-682; *R. R. Co.* v. *Fackney,* 78 Ill. 116; *Dobyns* v. *Railroad,* 75 Pac. 156; *Gilchrist* v. *Railroad,* 58 Fed. Rep. 708; *Davis* v. *Alvord,* 94 U. S. 545, 24 L. Ed. 283; 2 Pom. Equity, secs. 1268-1269; *R. R. Co.* v. *Davis,* 62 Miss. 271. The only contrary statement of the law that I have found seems to be in Jones on Liens, sec. 112. It is not very clear what the learned author means. He says: ''In some of the states mechanics' liens are enforced by ordinary equitable proceedings resulting in a decree for the sale of the property. The equitable jurisdiction is in such cases created by the statute and the remedy cannot be enlarged by the exercise of the general equity jurisdiction of the court.'' For this statement, the author cites only the case of *Canal Co.* v. *Gordan,* 6 Wallace 561.

If the author means that the right given by the statute could not be enlarged by a court of equity, the statement is correct on principle and is supported by the authority cited. If he means that the remedy afforded will not be co-extensive with the right given, he is neither supported by principle nor by the authority

In the case cited, the complainant had done work on a canal or flume. He claimed a lien on the whole canal, a section of which had been completed before he began work and the circuit court had, by its decree, subjected the whole canal to his lien. The supreme court of the United States, upon a construction of the statute creating

the lien, held that the lien of complainant existed only on that section of the canal on which he worked and did not extend to so much of it as had been completed before he began to work.

The substantial right of the complainant was the subject under consideration and there is nothing in the opinion to suggest that the remedy was not co-extensive with the right given by the statute. On the contrary, the court afforded a complete remedy to the full extent of the law.''

*W. D. Conn,* for appellee.

Counsel for appellant conceded that the legislature has the power to pass a law creating a lien of the character of the one here sought to be enforced; but he questions the manner in which it has exercised this power, in the enactment of chapter 171, of the Laws of 1912.

His first objection is that the legislature failed to provide any remedy for the enforcement of this lien. It is true that no method of enforcing the lien is provided for in this statute, and counsel says: ''When the same (statutory liens) are attempted to be created there must also be provided some remedy for their enforcement.'' He concedes the equitable maxim that equity will not suffer the right to exist without a remedy, but seems to deny that the case at bar presents a situation where this doctrine ought to be applied.

It seems to us that this case presents a fine opportunity for the proper application of the doctrine just referred to. It is not pretended that the law does not give the right, or that the legislture did not have the power to enact the law. Appellee has the statutory right, but no statutory remedy. Has a court of equity the power to supply this deficiency? In 19 Am. & Eng. Ency. Law (2nd Ed.), at page 35, is found the following: ''When a statutory lien is something more than a mere right of detainer and the statute provides no adequate method of

107 Miss. 42

its enforcement, or the statutory remedy is for some reason unavailable, equity has jurisdiction to enforce it. In 25 Cyc., near the top of page 682, is found the following: "A court of equity is also the proper tribunal in which to enforce statutory liens where the statutes provide no method of enforcement."

We have found no authority opposed to the rule just stated, and we believe that counsel for appellant cannot cite, as he has not, a single authority to support his contention that a court of equity has not power to enforce a lien created by law, where the law does not provide a remedy. Again, objection to the statute is made on the ground that it is not sufficiently specific in its directions as to the record in which shall be entered the certificate stating the amount of note, date when due, etc. In discussing this proposition, counsel says: "While it may be said that it is manifest what records are referred to, or what records it is intended that the said certificate shall be recorded in," and we think that this manifestly obviates any objection he could raise on this score. But if his admission is not a complete answer to his objection, it can be disposed of in another way. In contemplation of law, an instrument is deemed to have been recorded when it has been filed for the purpose of being recorded, as the law directs it shall be filed. Out of this doctrine has grown the more specific doctrine that where the law does not indicate in what book a certain instrument shall be recorded, it may be recorded in any book by the recording officer. In 34 Cyc., near the top of page 589, the law on this point is stated as follows: "Instruments not required by statute to be recorded in any particular book may be recorded in any book kept by the recording officer which is not exclusively devoted to the record of other instruments."

In the case of *Glading* v. *Frick*, 88 Pa. St. 460, the court uses the following language: "In contemplation of law, a paper is recorded the moment it is lodged in the office

and the fees paid.  In point of fact, it may not be, and in many instances is not, actually entered in the books until months afterward.  Where a man has complied with the law by depositing his papers in the recorder's office  and paying the fees, it would be a hard rule that would deprive him of his lien or his estate because of an error of the recorder in recording the instrument in the wrong book.  It would be different were there an act of assembly directing in what book the particular paper should be recorded.  In such a case, the recorder might be liable upon his official bond for a failure to record as required by law.  In the absence of any such act, we are unable to see how we can declare that a paper is not recorded when the holder has done all that the act of assembly requires in placing it on record.  To do so would seem very much like legislation.''  In this case the court held that, where certain instruments of writing are not required by law to be recorded in a particular book, they may be recorded in any book kept by the recorder; and that a building contract was valid though recorded in a deed-book.

In the case of *Farabee* v. *McKerrinhan,* 172 Pa. St. 234, the Pennsylvania supreme court reaffirmed the doctrine laid down in *Glading* v. *Frick,* and went into an extended examination of the authorities on the proposition. We have found nothing in the books denying the proposition.  Fnally it is argued that this statute is class legislation.  We are sure this contention is not sound.  That a law which applies to all of a class is not ''class legislation'' is so well established in this state, and everywhere else for that matter, we will not argue the proposition or cite any authorities to support it.  This law applies to all ''mutual'' insurance companies, and they are not *sui teneris*.  It is true that all insurance companies are alike in many features; but the mutual feature differentiates mutual companies and puts them in a class by themselves.

That mutual companies are in a class by themselves, the court will only have to refer to the statutes under

which they are organized, to see it clearly. We will not here set out all the many things required of mutual companies, in order that they may have the right to do business thereunder. In the recent case of *Hasell* v. *Merchants Union Insurance Co.*, 62 So. 645, this court responded to the suggestion that chapter 167, Laws of 1912, the Building and Loan Association Law, was special legislation, in violation of the state Constitution, and held that said law was not a special but a general law. The court pointed out the features of a building and loan association, and the contracts made by them, which differentiated them from other lenders of money. The pleadings in this case show that appellee was organized under this mutual insurance enactment, and the court will readily see there are a great many things required of companies organized under it, so many in fact as to leave no room for doubt but that they are in a class all by themselves, more so possibly than are building and loan associations in a class by themselves; yet this court held that law not special legislation, although the Constitution expressly provides that the legislature shall not pass special laws regulating the rate of interest on money. There is no such constitutional inhibition against mutual fire insurance companies, and if there were, this court would have to hold that this law was general and not special, or else overrule the Hasell case, *supra.*

We believe this case was correctly decided by the trial court, and we submit that the decree ought to be affirmed by this court.

Cook, J., delivered the opinion of the court.

The Home Mutual Fire Insurance Company, appellee, exhibited its bill of complaint in the chancery court of Alcorn county against appellant, in which it is alleged that it is a Mutual Fire Insurance Company, chartered and organized under chapter 171 of the acts of the legislature of 1912, and as such it had issued its policy to

appellant in the sum of five hundred dollars, insuring a
certain building against loss by fire.   It is further alleged
that appellant accepted said policy, and for the premium
due thereon appellant executed and delivered to appellee
his promissory note for twenty dollars, due and payable
May 1, 1913; that said note is long since due and appellant
had failed and refused to pay same.   The prayer of the
bill is that the title to the land upon which the building
insured is located be vested in a commissioner, who shall
be ordered to advertise the same for sale in the manner
provided by law, and out of the proceeds the note, inter-
est, and costs be paid.

Appellant answered the bill of complaint, admitting all
of the allegations, but denying the power of the chancery
court to grant the relief prayed for.

The cause was set down on bill and answer, and the
court decreed that complainant was entitled to relief and
ordered the land sold by a commissioner to satisfy the
claim sued on.

The contention of appellant is: First, that the act of
the legislature of 1912, being chapter 171 of the Laws of
1912, is unconstitutional, because it is alleged to be
class legislation.   Second, that, conceding the power of
the legislature to pass the act, the act in question is in-
valid because it contains no direction as to what particu-
lar book in the office of the clerk of the chancery court a
record is to be made of the certificates required to be
filed by section 18 of the act.   Third, if the act is con-
stitutional and sufficiently definite in its scope, the chan-
cery court is not given jurisdiction to enforce the lien
given by the act in favor of the insurance company on
the property insured.

It is not shown wherein the act under review is uncon-
stitutional, except to say that it is class legislation.   The
act criticised provides for the organization of mutual in-
surance corporations; limits the amount of insurance to
be taken on each risk; gives to all policyholders the right

to vote for directors; requires that a majority of the directors shall be residents of this state; provides for dividends to be paid to policyholders out of the earnings, for assessment of policyholders, whenever necessary to pay losses, etc. It does not appear that the class of corporations embraced within the provisions of the act are given powers and privileges not accorded to all corporations doing a similar business.

In *Magoun* v. *Illinois Trust Co.,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037, the supreme court of the United States, discussing the principle of reasonable classification, said that the state may distinguish, select, and classify objects of legislation, and necessarily the power must have a wide range of discretion.

In *Orient Insurance Co.* v. *Daggs,* 172 U. S. 562, 19 Sup. Ct. 281, 282 (43 L. Ed. 552), the court, quoting with approval *Magoun* v. *Illinois Trust Co., supra,* remarked:

"And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons or in their relations. It suffices if it is practical and is not reviewable unless palpably arbitrary."

We can see no discrimination against some in favor of others in this act. We are unable to say that the classification adopted by the legislature is arbitrary, capricious, or fanciful.

The second contention is without merit, because section 18 provides that the lien shall take effect when the certificate is filed with the chancery clerk, and it makes no difference whether it is recorded or not.

As to the third contention, we are of opinion that the jurisdiction of the chancery court to enforce the remedy prayed for is inherent, and it was not necessary for the statute to confer upon the court the power to enforce the lien. The statute gives the right, and the court has the power to enforce same. 12 Cyc. 681; *Railroad Co.* v.

*Fackney,* 78 Ill. 116; *Dobbins* v. *Railroad,* 19 Colo. App. 257, 75 Pac. 156; 2 Pomeroy's Equity, secs. 1268, 1269.

The points considered are the points relied on by appellant, and, believing that all are without merit, the decree of the lower court is affirmed.

*Affirmed.*