BANK v. DIVINE GROCERY CO.

(*Knoxville.* November 12, 1896.)

1. CONSTITUTIONAL LAW. *Title and subject of statutes.*

The provision of Acts 1895, Ch. 128, exempting debts already contracted from the prohibition therein made against transfers of property to preferred creditors, is not embraced and covered by the title of the Act, which, in terms, provides for and admits of only absolute and unqualified prohibition of such preferences. The Act, therefore, violates, in this particular, the prohibition of Art. II., § 17, of the Constitution, that "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title. (*Post, pp. 604–607.*)

Constitution construed: Art. II., § 17.

Act construed: Acts 1895, Ch. 128.

2. SAME. *Same.*

The provision of Acts 1895, Ch. 128, prohibiting creditors from giving preferences "by permitting judgments to be taken by default," is not embraced or covered by the clause in the title of the Act authorizing the prohibition of preferences by "confession of judgment." The Act, therefore, violates, in this particular, Art. II., Sec. 17, of the Constitution, which provides that "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title." (*Post, pp. 607–609.*)

Constitution construed: Art. II., Sec. 17.

Act construed: Acts 1895, Ch. 128.

3. SAME. *Law of the land.*

Acts 1895, Ch. 128, forbidding all transfers of property to prefer creditors, or that "would have that effect," whether made by a solvent or insolvent debtor, is an unconstitutional invasion and deprivation of the property rights of the citizen, and is void. (*Post, pp. 609–614.*)

---

Bank *v.* Divine Grocery Co.

---

Constitution construed: Art. I., Secs. 8, 21.

Act construed: Acts 1895, Ch. 128.

Case cited and approved: Stratton Claimants *v.* Morris Claimants, 89 Tenn., 497.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McConnell, Ch.

Pritchard & Sizer, White & Martin, and A. W. Gaines for Bank.

Cooke, Swaney & Cooke, and Shepherd & Frierson for Divine Grocery Co.

Snodgrass, Ch. J. The bill in this case was filed by creditors of the Divine Grocery Company, to set aside several conveyances, and subject property conveyed for the satisfaction of complainants' debts. Two of the conveyances were held by the Chancellor to have been valid, and from this part of the decree there was no appeal; the other two were declared to be void as in violation of the assignment Act of 1895. Defendants appealed and assigned errors. The Act is contained in Chapter 128 of the Acts of the General Assembly of that session. It was approved May 11, and took effect from the date of its passage, and is found on pages 258, 259, 260, of the Acts of 1895. It is entitled, "An

Bank *v.* Divine Grocery Co.

Act to secure to creditors a *pro rata* distribution of the property, estates, and assets of debtors, and to prevent debtors from making preferences among creditors by assignments, deeds of trust, mortgages, deeds, sale, pledge, or by any other form of transfer or conveyance, or by confession of judgment, and to repeal Chapter 121 of the Acts of the General Assembly of the State of Tennessee of 1881, entitled, 'An Act to secure to creditors an equal and just distribution of the estates and assets of debtors who make general assignments for the benefit of their creditors, and to prevent the giving of preference in such assignments, or by other conveyance, confession of judgment by default, or collusion in contemplation of a general assignment.' "

If this Act be valid, then certain preferences were given, which, according to its provisions, are not permissible, and the decree of the Chancellor, and of the Court of Chancery Appeals affirming this decree, are correct. If it be invalid, there is no objection to the preferences contained in these deeds; and the question, therefore, to be determined, is, whether or not the Act is constitutional.

The first objection urged is that its title is not broad enough to cover the purposes of the Act, and that the Act embraces more than one subject, and it therefore violates Art. II., Sec. 17, of the Constitution of the State, which, among other things, provides that "no bill shall become a law which

embraces more than one subject, to be expressed in the title.'' We proceed, therefore, to analyze the Act, to determine whether it is obnoxious to this constitutional provision. The title of the Act we have already quoted, and, leaving out so much of it as refers to the repeal of a former law, which, of course, covers no subject other than that repeal, we quote again the abbreviated title: ''An Act to secure to creditors a *pro rata* distribution of the property, estates, and assets of debtors, and to prevent debtors from making preferences among creditors by assignments, deeds of trust, mortgages, deeds, sale, pledge, or by any other form or transfer, or conveyance, or by confession of judgment.''

It will be seen that it is, in general and specific terms, to prevent debtors from making preferences among creditors by assignment, deeds of trust, mortgages, deeds, sale, pledge, or by any other form or transfer, or conveyance, or by confession of judgment. It is general, absolute, sweeping, and unconditional to prohibit any preference without limitation or exception, yet the eighth section of this Act provides as follows: ''That the provision of the Act shall not apply to any assignment, mortgage, confession of judgment, or other conveyance, made to pay or secure an indebtedness contracted prior to the passage of this Act.'' Here it is obvious that, under a title of one subject forbidding a preference, an effort is made to legislate by limitation that permits a preference, and is manifestly not in accord

with, or pursuance of, the title of the Act, and that the bill embraces this subject and provision for antecedent debt preference not contemplated in, but in direct antagonism to the specific terms of its title. We are not here discussing at all the question of the power of the Legislature to provide for such preference. We are merely determining the question whether that can be done under a title which specifically and positively forbids any preference.

Again, the title of the Act is to prevent preferences, among other things, "by confession of judgment" [only], so far as Court proceedings are referred to. The third section provides that any confession of a judgment by debtors, or permitting judgment to be taken by default, fixing a lien or incumbrance on any of the debtor's property, estate, or assets, and made for the purpose of giving preference to one or more creditors, or that would so result, shall be held illegal and void, and such preferred creditor or creditors shall only be permitted to share ratably in a distribution of such debtor's assets. Here it is again obvious that a provision has been inserted in the Act of a most vital and important character—and without which it is presumed that Act would not have been passed—upon a subject not within the title of the Act. It is clear that this effort to legislate against the result of a judgment by default, is entirely beyond the legislation contemplated in the title as to the effect of a judgment by confession. They are not synonymous terms, and the express language of

the Act clearly shows that the Legislature did not
so understand them.  A judgment by confession is one
which results from the voluntary agreement of the
parties; a judgment taken by default is one result-
ing either from the fact that a defendant has no de-
fense to make, or does not appear to make it.  If
a party is sued upon a valid obligation to which he
has no defense, and consequently attempts to inter-
pose none, a judgment by default may be naturally
and properly taken against him.  Under this section,
it is denied the lien effect which would have resulted
had he come forward and made a pretended or in-
effectual defense.  There can be no reason that a
debtor should be compelled to make a defense when
he has none, and his failure to do so when he has
none is quite a different thing, in fact as in law,
from voluntarily coming forward and confessing a
judgment.  In this connection we are not unaware
of the objection which might be suggested, that the
form of a judgment by default in Courts of Equity
is put as "*pro confesso*," or "for confessed," "as
if confessed," but neither that language nor the effect
of such judgment is a judgment by confession.  The
judgment is taken "as if" or "for" confessed, but
is not a judgment confessed by the party.  Its terms
are not a judgment by confession, and its effect is
not such.  It is only such judgment as is given a
like effect, and hence the expression *pro confesso*, or
for confessed.  The title of the Act provided for
judgments by confession.  The section referred to, in

fact, attempts to legislate the same effect for judgment by default where there has been no confession by the party, and is therefore beyond the scope and purpose of the title.

The second section of the Act provides that whenever any assignment, deed of trust, mortgage, deed, sale, or pledge, or any other conveyance or transfer of a part or portion of a debtor's property, estate, or assets, is made for the purpose of preferring one or more creditors, or would have that effect, it shall be illegal and void, and all of such property, estate, or assets shall be divided *pro rata* among all of the creditors of said debtor. It is clear that this absolutely prevents the transfer, sale, pledge, or mortgage of all or any part of the property of any debtor, however solvent or insolvent, for the payment of any debt, however large or small, and that it denies him the privilege and power (denies to all solvent debtors, with any amount of property, as well as to all insolvent debtors), to pay all or any part of his indebtedness, large or small, without subjecting him to suit at the instance of other creditors, according to Sec. 5 of the Act, to sequester and appropriate his property and throw him into involuntary bankruptcy, and ruin his business and reputation as a consequence. It must be observed that this Act has nothing to do with the question of the solvency or the insolvency of debtors, either in its caption or its general provisions. It is not an Act to prevent insolvent debtors from making preferences; it is an Act to prohibit all

13 P—39

debtors from making any preferences, and the terms of the second section, as already shown, are in express and positive prohibition of the disposition of any part of the property of a debtor, however solvent, to the payment of any debt, however small. The practical effect of this is to compel debtors to dispose of their property for cash, even when perfectly solvent, and appropriate the cash to the debt, rather than exchange the property with the creditor on any advantageous terms which might be offered by the latter; a result which it is obvious would but produce the greatest oppression and hamper and hinder the citizen in the ownership and exchange of property in a way that is absolutely intolerable if there be any fundamental law which will prevent. That fundamental law is found in Art. I., Sec. 8, of the Constitution of the State, which provides "that no man shall be taken or imprisoned, or disseized of his freehold, liberties, or privileges, outlawed or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land.".

It is, and correctly, insisted that while this Act does not deprive him absolutely of his property, it takes away from him that element of its value which consists in the right to use and legitimately dispose of it; and here it must not be forgotten that we are not dealing with the question of an insolvent debtor conveying his property, or any part of it, or of a solvent debtor conveying his property,

or any part of it, for the purpose of hindering and delaying or defeating creditors, for the Act does not stop with a declaration that such disposition, if made for the purpose of preferring one or more creditors, shall be void, but adds that where it will have that effect, it shall be void. And, as any transfer of any part of the property of a debtor, however solvent, to a creditor in the payment of a debt has the effect of giving each creditor a preference to that extent, it is manifest that this is a limitation upon the right, for a proper purpose, by a solvent debtor, to convey any part of his property at all, if in doing so he shall satisfy any of his debts.

It was decided in the case of the *Stratton Claimants* v. *Morris Claimants*, 5 Pick., 497, that when the Constitution of this State was framed, the right to own, to hold, to enjoy, to alien, to devise, and to transmit property by inheritance was enjoyed to the fullest extent and perfection of absolute right, and one of the objects of the Constitution was to protect and preserve this right. To take from property its chief element of value, and to deny to the citizen the right to use and transfer it, in any proper and legitimate method, is as much depriving him of his property as if the property itself were taken.

Of course we need not repeat again the meaning of the phrase in this connection, "the law of the land;" it does not need to be said that the deprivation provided against, is not merely that which might result from an Act of the Legislature under-

taking to take the property, or to deprive the citizen of its value for any purpose. A subsequent constitutional provision (Sec. 21 of Art. I.) provides that no man's particular services shall be demanded, or property taken or applied to public use, without the consent of his representatives, or without just compensation being made therefor. It has been held that private property may be taken for public use, under this provision, only upon just compensation, but not for private use at all.

These general provisions in respect to the right to own property equally protect the right to use, enjoy, exchange, and transmit it, as held in the Morris case before referred to, and neither can be taken from the citizen by the arbitrary enactment of the Legislature. That the citizen can be restrained from any improper use or improper disposition of his property is not doubted, and is, of course, not asserted here, but such is not the effect of this Act, or if the purpose of the legislators was to accomplish this result, they have attempted it by means of legislation beyond their power to adopt. It was probably not within the contemplation of the legislators in this sweeping way to deprive the solvent debtor of his power to pay debts with property, or to compel him, under such severe penalties, to always pay cash.

But we can judge of the purpose only by the terms employed in the Act. The positive provisions of this Act will bear no other construction than

that put upon it. We are not dealing with it as an Act in which the legislators may or may not have meant, or may or may not have intended, that which the Act actually does, nor are we construing it upon any assumption of what its promoters and supporters might assume they intended to do, or desired to do, in the procurement of its passage; we are dealing with what has been in fact done, and we can give it only such construction as it unmistakably requires. The Act is dealt with in argument, and assumed to be, in the general understanding of its supposed purpose, as designed to prevent improper preferences, and, therefore, to contain only such provisions as would effectuate this laudable object. If such were the Act, its policy would be one which we could not disapprove, and, whether disapproved or not, we would be compelled to sustain. But it too frequently occurs that where an effort has been made to do what the public may understand as the proper thing to be done, it is taken for granted that everything was done which was expected, and nothing more, and the Act is approved or disapproved, not for what it actually is, but for what each for himself may suppose it to be, or to have been intended to be. Such a mistaken view seemed to have been taken of the former Act which this was intended to repeal, and much antagonism grew up among certain of the profession as to the construction placed upon it by our predecessors, and followed by us, in this Court, a con-

struction wholly unwarranted by what the Act was assumed to be, but absolutely required in consequence of what it actually was. This Act which repealed it had many better features, and had the merit of much more simplicity of detail, and less difficulty of construction, but was open to more serious objection in its glaring injustice and inequity, resulting from the nonobservance of the constitutional requirement pointed out. It is the duty of this Court to sustain legislative Acts when it can, and no more pleasant duty is discharged by the Court, while no less pleasant one is imposed than that which compels a determination of their invalidity. But the Constitution is the first law of the land; it must be conformed to by Legislatures and by Courts, and when an Act is in violation of its provisions, the duty of declaring it to be such invites no evasion, and admits of none. It is fortunate when Acts of this character, which may ultimately affect the largest property interests, may have the question of their constitutionality early determined, particularly in view of the fact that future legislation might be desired. This question is decisive of the controversy in the case. These deeds were not invalid unless they were invalid under the Act of 1895.

It results, therefore, that the decree of the Court of Chancery Appeals must be reversed, and, as to these conveyances, be dismissed with costs.