SWIFT & Co. *v.* ROMANS HALEY, County Clerk, *et al.*

(*Nashville.* December Term, 1919.)

1. **TAXATION.** Act prohibiting re-assessment applies to merchant's taxes assessed by county court clerk.

   Acts 1915, chap. 124, prohibiting back- or re-assessment of property assessed by the regularly constituted assessing authorities, is not limited to taxes assessed by the tax assessor, but applies also to the ad valorem taxes on merchants' capital imposed by Acts 1907, chap. 602, secs. 26, 29, 30, which are assessed as well as collected by the county court clerk. (*Post, pp.* 386, 387.)

   Acts cited and construed: Acts 1915, ch. 124; Acts 1907, ch. 602, secs. 26, 29, 30.

2. **TAXATION.** Act prohibiting re-assessment is not unconstitutional as permitting unequal taxation.

   Acts 1915, chap. 124, prohibiting the back- or re-assessment of taxes once assessed, does not violate Constitution article 2, section 28, requiring all property to be taxed according to its value, to be ascertained as the Legislature shall direct, so that taxes shall be equal and uniform. (*Post, pp.* 387, 388.)

   Constitution cited and construed: Art. 2, sec. 28.

3. **STATUTES.** Amendment permitting reassessment of property fraudulently assessed held within title.

   The amendment of Acts 1915, chap. 124, prohibiting back- or re-assessment of property by Acts 1917, chap. 98, so as to except from the prohibition property inadequately assessed because of connivance or fraud is within the title of the act of 1915, "to prevent back- or re-assessment of real and personal property which has been assessed by the regularly constituted assessing authorities," so that the amending act does not violate Constitution article 2, section 17, requiring the subject of an act to be expressed in its title. (*Post, pp.* 388-395.)

Cases cited and approved: State v. Brown, 103 Tenn., 450; State v. Yardley, 95 Tenn., 546; State v. Bradt, 103 Tenn., 584; Hyman v. State, 87 Tenn., 109; Cannon v. Mathes, 55 Tenn., 519; Railroad v. Crider, 91 Tenn., 494; State v. Yardley, 95 Tenn., 546; Bank v. Divine Grocery Co., 97 Tenn., 603; State v. Cumberland Club, 136 Tenn., 96.

Cases cited and distinguished: State ex rel. v. Schlitz Brewing Co., 104 Tenn., 715; Kizer v. State, 140 Tenn., 582.

Constitution cited and construed: Art. 2, sec. 17.

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. Jas. B. Neuman, Chancellor.

Horace Osment, W. R. Chambers and T. B. Caldwell, for appellant.

Norman Farrell, Jr., for appellee.

Mr. Justice McKinney delivered the opinion of the Court.

The original bill in this cause was filed by the complainant, Swift & Co., a foreign corporation engaged in the wholesale mercantile business at Nashville, Tenn., against the defendant Romans Hailey, county court clerk of Davidson county, and L. B. Ormes, revenue agent for the State of Tennessee, in their official capacities, for the purpose of enjoining them from back- or reassessing it as a merchant for the years 1916, 1917, and 1918.

The bill charges that the complainant has for these years been regularly assessed on ts realty and, personalty, a privilege tax as a wholesale dealer, and an *ad valorem* tax upon the capital invested in its business, and that it has paid all taxes so assessed against it for said years; that, notwithstanding said payments, the following citation has been served upon it:

"Nashville, Tenn. Aug. 11, 1919.

"State of Tennessee, Davidson County.

"To Swift & Co., at 800 4th Ave. N.: Proper motion having been made before me by L. B. Ormes, State Revenue Agent for the State of Tennessee, under section 30, c. 602, of the Acts of Tennessee 1907, you are cited to appear before me, Romans Hailey, county court clerk, Davidson county, Tenn., on the 21st day of August, 1919, at 10 o'clock a. m., for the purpose of being assessed or reassessed for the years 1916, 1917, 1918 upon omitted or inadequately assessed *ad valorem* property in the said county State and city, and show cause, if any, why said property should not be back-assessed or re-assessed at its actual cash value.

"Issued at my office this 11th day of August, 1919.
[Signed]                    ROMANS HAILEY,
                       County Court Clerk."

A preliminary injunction was granted. Thereupon the defendants filed a written motion to dissolve the injunction and dismiss the bill for want of equity on its face, which motion was disallowed by the chancellor.

A demurrer was then filed by the defendants, and upon the hearing the demurrer was overruled, and the chancellor, in his decretion, permitted the defendants to appeal to this court.

It is conceded by both parties that the tax involved is the *ad valorem* tax for the years 1916, 1917, and 1918 upon the capital invested in the complainant's business as a merchant, and that there has been a payment by complainant for these years.

The theory of the defendants is that said property was inadequately assessed.

The defendants, in issuing said citation, were proceeding under the authority given them by the last General Assessment Law 'chapter 602 of the Acts of 1907). Said act is a very lengthy one, and, without undertaking to copy any portions thereof in this opinion, we will briefly state its provisions pertinent to the questions involved in this suit.

Section 9 provides for the election of a tax assessor in each county, fixes his compensation, etc.

Section 12 prescribes his duties, which, in the main, are to assess real and personal property, and to this end he is required to go on the premises and examine all realty to be assessed, and is to personally see each taxpayer residing in his county and take his personal statement of all property of such taxpayer, real, personal, and mixed, and have same verified.

Section 26 requires each merchant to pay an *ad valorem* tax upon the capital invested. Such merchant is required at stated periods to file with the county court clerk a statement under oath showing the amount of capital invested in his business to be assessed for taxation, and requires him to pay such *ad valorem* tax to said county court clerk.

142 Tenn. 2w.

It further provides that, if such statement should for any reason be considered unjust, incorrect, or inadequate, said clerk (or others named therein) shall issue a citation to such merchant to appear at a stated time and show cause why said statement should not be revised and corrected, and the clerk is given authority to revise or correct same.

Section 29 provides that all merchant taxes shall be collected by the county court clerk.

Section 30 provides for the back- or re-assessing of all property included in the act, the county court clerk to back- or re-assess in the case of merchants' taxes or delinquent privilege taxes, and the county trustee is to back-or re-assess in case of other taxes. This section also gives the form of the citation to be issued.

It is contended by the complainant that the right to thus back- or re-assesses property of every kind was abrogated by chapter 124 of the Acts of 1915 which is as follows:

"An act to prevent back- or re-assessment of real and personal property which has been assessed by the regularly constituted assessing authorities, and to repeal all laws in conflict herewith.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that from and after the passage of this act, it shall not be lawful for any back-or re-assessment to be made against any property in the State of Tennessee which has been assessed by the regularly constituted assessing authorities: Provided, however, that nothing in this act shall prevent the back-or re-assessment of any property real or personal,

which shall have entirely escaped assessment and taxation, providing that unless property has escaped taxation by fraud.

"Sec. 2.   Be it further enacted, that all laws and parts of laws in conflict with this act be and the same are hereby repealed.

"Sec. 3.   Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

In reply to this contention the defendants insist, in the first place, that chapter 124 of the Acts of 1915 only contemplates or refers to property assessed for taxation by the county tax assessor, and that it has no reference to property upon which an *ad valorem* tax has been paid or is due; in other words, that the county tax assessor has no authority to assess or collect an *ad valorem* tax on merchants, but that the merchant assesses his own property and pays the tax to the county court clerk; that such clerk is not an assessor, but a collector.

This view is entirely too narrow, and we find nothing in either act to justify such a limited construction. The clerk is both an assessor and a collector.   He assesses the capital invested in a mercantile business in much the same way as a tax assessor assesses real and personal property.   In both cases the taxpayer makes out a sworn statement as to his property.   In the one case the county tax assessor has a right to revise such statement, while in the other case such privilege is given the county court clerk.

But section 30 of the act of 1907 settles this matter beyond question; for it expressly provides that the county court clerk shall back- or re-assess property in case of merchants' taxes or delinquent privilege taxes, and the county trustee is empowered to back- or re-assess all other property. So that the county court clerk, by express provision, is constituted an assessor, and comes within both the letter and the spirit of chapter 124 of the Acts of 1915.

In the second place, the defendants claim that chapter 124 of the Acts of 1915 is unconstitutional and void because in violation of section 28, art. 2, of the Constitution of Tennessee, which provides that "all property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State," and which provides that no one species of property on which a tax may be collected shall be taxed higher than any other species of the same value.

This contention is not tenable. In the absence of statutory authority no right exists to re-assess property where it has been once assessed in the manner prescribed by law.

By chapter 602 of the Acts of 1907, the Legislature provided that in certain instances property might be reassessed. This feature of the act the Legislature saw proper to repeal by chapter 124 of the Acts of 1915. When the Legislature prescribes a system by which all property is taxed equally and uniformly, the constitutional requirement has been complied with; in other words, this provision of the Constitution means that

all property must be taxed under the same principle. When thus assessed, it is a matter of policy to be determined by the Legislature as to whether property shall be reassessed where the valuation appears to be inaccurate.

We are unable to see how the act in question conflicts in any way with this constitutional safeguard.

In the third place, it is claimed by the defendants that chapter 124 of the Acts of 1915, as amended by chapter 98 of the Acts of 1917, authorizes the reassessment of an *ad valorem* tax against the complainant. Chapter 98 of the Acts of 1917 is as follows:

"An act to amend chapter 124 of the Public Acts of 1915, being entitled, 'An act to prevent back- or reassessment of real and personal property, which has been assessed by the regularly constituted assessing authorities, and to repeal all laws in conflict herewith.'

"Section 1.  Be it enacted by the General Assembly of the State of Tennessee, that chapter 124 of the public Acts of 1915 entitled, 'An act to prevent back- and reassessment of the real and personal property, which has been assessed by the regularly constituted assessing authorities,' etc., be and the same is hereby amended by striking out of lines ten and eleven of the published acts the words 'provided that unless property has escaped taxation by fraud,' and by substituting thereafter the following words, 'or shall have been inadequately assessed by reason of the connivance or fraud of the tax debtor.'

"Sec. 2.  Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

In response to this claim the complainant insists that chapter 98 of the Acts of 1917 is. unconstitutional and void for the reason that it violates that portion of section 17, art. 2, of the Constitution which provides that: ''No bill shall become a law which embraces more than one subject, that subject to be expressed in the title.''

. The caption of the act of 1915 recites:

''An act to prevent back- or re-assessment of real and personal property which has been assessed by the regularly constituted assessing authorities.''

The amendatory act, according to the contention of the complainant, reads into the original act certain exceptions without changing the caption, thus placing the amendatory act in conflict with the caption of the original act.

Counsel for the complainant concedes that such exceptions may be made where the title is broad and general, but denies the right where the title is narrow and restricted, and insists that the title in the instant case falls within the latter rule. .

In our opinion this insistence is met and overcome by the able opinion delivered by Judge CALDWELL in the case of *State ex rel.* v. *Schlitz Brewing Co.*, 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941, where the court was considering the validity of the antitrust statute of 1897 (chapter 94) the caption of which is as follows:

''An act to declare unlawful and void all arrangements and contracts, agreements, trusts or combinations made with a view to lessen or which tend to lessen free com-

petition in the importation or sale of articles imported into this State; or in the manufacture or sale of articles of domestic growth or of domestic raw material; to declare unlawful and void all arrangements, contracts, agreements, trusts or combinations between persons or corporations designed, or which tend to advance, reduce or control the price of such product or articles to producer or consumer of any such product or articles; to provide for forfeiture of the character and franchise of any corporation, organized under the laws of this State, violating any of the provisions of this act; to prohibit every foreign corporation, violating any of the provisions of this act, from doing business in this State; to require the Attorney General of this State to institute legal proceedings against any such corporations violating the provisions of this act, and to enforce the penalties prescribed; to prescribe penalties for any violation of this act; to authorize any person or corporation damaged by any such trust, agreement or combination, to sue for the recovery of such damages, and for other purposes."

Section 4 of the body of the act is as follows:

"Sec. 4. Be it further enacted, that the provisions of this act shall not apply to agricultural products or live stock while in the possession of the producer or raiser."

It was insisted that the act contained more than one subject on account of the exceptions contained in section 4. The court said:

"The title to this act is unnecessarily full and extended, in that it needlessly undertakes to epitomize and recite in considerable detail the legislation to follow.

Black's Constitutional Law, section 107; *State* v. *Brown,* 103 Tenn., 450, 53 S. W., 727; *State* v. *Yardley,* 95 Tenn., 546, 32 S. W., 481 34 L. R. A., 656.

"The essence of the subjects expressed is the prohibition and punishment of those transactions which are calculated to lessen competition in trade, or to influence the price of either imported or domestic articles; and it requires only a casual reading of sections 1, 2, 3, and 5 of the act to discover that each of them deals with some part of that subject, the former two employing practically the same language used in the title.

"The fourth section obviously relates to the same subject, and to that alone. It mentions no new or different subject, directly or indirectly, and adds nothing to the scope of the other sections, but, on the contrary, limits their application in express terms. The fourth section is purely restrictive and exclusionary. It is in the nature of an exception, and its only office is to except or exclude from the operation of the act a small portion of the domain otherwise included, and thereby bring the legislation within somewhat narrower limits. The legislation included in the other sections is undoubtedly within the subject expressed in the title; hence this section, which only excepts or excludes certain transactions from the prohibition and penalties of that legislation, necessarily relates to that subject, and to it alone.

"It is a contradiction in terms and in logic to say that the transactions excepted by the fourth section are not embraced in the subject expressed in the title, and that excepting them is the introduction of a new sub-

ject; that the exclusion of a part of one thing is the inclusion of something else. That which excepts does not enlarge, and that which is excluded cannot be additional.

"The title of a legislative bill may be either narrow and restricted or broad and general, as the members of the General Assembly may prefer, and whether it be in the one form or the other in a given instance, all legislation that is germane to the subject as expressed in the title is within the title and permissible under it; but, of course, much that might be germane under the latter class of titles could not be so under the former.

"If the title adopted be narrow and restricted, carving out for treatment only a part of a general subject, the legislation under it must be confined within the same limits (*State* v. *Bradt*, 103 Tenn., 584, 53 S. W., 942; *Hyman* v. *State*, 87 Tenn., 109, 113, 9 S. W., 372, 1 L. R. A., 497; Cooley Const. Lim. [5 Ed.], 179); if it be broad and general, the legislation under it may have a like scope.

"In every instance the enactment must come within the title, but in no case is it required to cover the whole domain within the title. The Constitution forbids that an enactment shall go beyond the limits of its title, but there is no requirement that it shall completely fill it. Our statute books afford numerous instances of somewhat meager enactments under ample titles, and there are perhaps but few of those with broad and general titles that would not admit of some additional provision.

"It is of no legal consequence that the present title does not mention the exception, because it is never essential that the title of a bill recite the subdivisions, provisos, and exceptions appearing in its body, and the fact that they do appear without previous mention in no way affects the constitutionality of the act, so long as they are germane to the subject expressed in the title. *State* v. *Brown,* 103 Tenn., 450, 53 S. W., 727; *Cannon* v. *Mathes,* 8 Heisk., 519; *Railroad* v. *Crider,* 91 Tenn., 494, 19 S. W., 618; *State* v. *Yardley,* 95 Tenn., 546, 32 S. W., 481, 34 L. R. A., 656.

"Indeed, every title admits of exceptions in the body of the act, unless it be so framed as to 'specifically and positively' forbid them, as was held to be true of the title of the act considered in *Bank* v. *Divine Grocery Co,.* 97 Tenn., 603, 37 S. W., 390.

"The title of the act now under consideration is not of the latter class. It does not 'specifically and positively,' or in any other manner, forbid the exception; hence the exception, being germane to the subject expressed, is admissible under the title employed.

"Nor does it matter that the exception appears in a section by itself. The act must be construed as a whole, and when that is done it has precisely the same meaning that it would have if the exception had been appropriately incorporated in the other sections. If the meaning be clear, the relative position of the exception in the enactment is unimportant.

"Demurrants say that the exception is out of accord with, in antagonism to, and not within the contemplation of, the title; but that is a mistake, since, as already

stated, the title, though not reciting the exception, legally includes and authorizes it.

"It follows from what has been said that section 4 of this act does not introduce a subject not expressed in the title, and that the learned chancellor was in error in sustaining the fourth ground of demurrer."

The latest reported case in which this question was under consideration is *Kizer* v. *State,* 140 Tenn., 582, 205 S. W., 423, which involved the constitutionality of chapter 12 of the Acts of 1917, the caption being as follows:

"An act prohibiting the receipt of intoxicating liquors from a common or other carrier, prohibiting the possession of such liquors hereafter received from a common carrier, or other carrier, and prohibiting the shipment and personal transportation of such liquors into this State, or between points within this State, whether intended for personal use or otherwise."

The body of the act contained a number of exceptions, but the court held that the act did not violate article 2, section 17, of the Constitution.

This act, in its caption, prohibited the receipt of intoxicating liquors, the Anti-Trust Act prohibited combinations in trade, and the act in question prohibits back- or re-assessing of property. In the Bone Dry Act and the Anti-Trust Act the court held that the exceptions did not invalidate them. By the same parity of reasoning we conclude that the exceptions in this case do not invalidate the act in question. Our decisions in which article 2, section 17, of the Constitution were considered have been collected in the case of *State* v. *Cumberland Club,* 136 Tenn., 96, 188 S. W., 583.

Learned counsel for the complainant contends that *Bank* v. *Divine Grocery Co.*, 97 Tenn., 603, 37 S. W., 390, is a direct authority for his position. In that case no authority was cited in support of the conclusion reached by the court. So far as we are aware, that decision has never been approved by any subsequent decision of this court. In *State ex rel.* v. *Schlitz Brewing Co.*, supra, it was referred to and its holding was circumscribed and limited to cases where the title was so framed as to "specifically and positively" forbid exceptions in the body of the act.

We have no desire to extend the holding in *Bank* v. *Divine Grocery Co.*, supra, beyond the interpretation placed upon it in *State ex rel.* v. *Schlitz Brewing Co.*, supra. We are of the opinion that the title to the act in question does not "specifically and positively" forbid exceptions in the body of the act.

Other errors assigned by the defendants will be overruled.

It results that the decree of the chancellor will be reversed the bill will be dismissed and the complainant will pay all costs.